JOSEPH LOSER ET AL. v. THE BOARD OF MANAGERS OF
THE SOLDIERS' HOME, AND JAMES A. McKEE,
COMMANDANT.

*Soldiers' Home—Regulations—Disposition of pension money.*

1. That portion of a rule adopted by the board of managers of the
Michigan Soldiers' Home requiring inmates to turn over to
the commandant, upon receipt of their quarterly pension
checks, any sum in excess of five dollars per month, to be
held subject to the disposal of the board of managers, does
not constitute an assignment or transfer of any right, claim,
or interest in said pension, within the meaning of the act of
Congress prohibiting such assignment or transfer, and is sus-
tained as within the power conferred upon the board by
section 8 of Act No. 152, Laws of 1885 (3 How. Stat. §
1984 h), which makes it the duty of the board to "prepare, and
carefully digest and mature, a system of government for said
home, embracing all such rules, regulations, and general laws
as they may deem necessary for preserving order, for enforc-
ing discipline, for preserving the health of such disabled
soldiers, sailors, or marines as may be received at this home."

2. That portion of said rule directing the commandant in carrying
out its provisions to ascertain, as near as may be, the wife,
dependent children or parents of such inmates, if any, and to
have the pension money so turned over sent to them, is not
within the power conferred by the statute cited, and to that
extent the rule is void.

*Mandamus.* Argued June 28, 1892. Denied July 28,
1892.

Relators applied for *mandamus* to compel the respondents
to vacate a certain rule and order relating to the pensions
of inmates of the Soldiers' Home. The facts are stated
in the opinion.

*Taggart, Wolcott & Ganson,* for relators.

*M. Brown,* for respondents.

GRANT, J. The relators, 16 in number, are inmates of the Soldiers' Home of this State, and pray for the writ of *mandamus* to compel the respondents to vacate rule No. 14, adopted by the board for the management of said home, and general order No. 8, issued by the respondent McKee, as commandant. The general order and rule are as follows:

"HEADQUARTERS MICHIGAN SOLDIERS' HOME.
"General Order No. 8.                    May 7, 1892.
"1. The following rule, adopted by the board of managers Michigan Soldiers' Home, May 6, 1892, in regard to pensions, is published for the information of all concerned:

"RULE 14. (1) Every pensioner residing in this home, and accepting its benefits, must turn over to the commandant, upon receipt of his quarterly pension check, any sum in excess of five dollars per month, the same to be held subject to the disposal of the board of managers. Any infringement of this rule on the part of an inmate will be followed by his discharge from the home.

"(2) That the commandant be directed in carrying out the pro. visions of this rule to ascertain, as near as may be, the wife, dependent children or parents of inmates of the home who may receive pensions, and to have the money sent to them. In case there is no wife, dependent children or parents, then the money received is to be held by him, and the amounts reported to the board, to be held by them, and paid to the inmate upon his final discharge from the home.

' (3) In cases where improper use is made of the allowance of $5 per month herein provided for, leading to misconduct or infractions of the rules of the home, the allowance so granted shall be suspended.

"(4) That the standard of admission, as regards pensioners, shall be that no applicant who receives over $12 per month pension shall be admitted to this home, unless he needs hospital treatment.

"(5) It shall be competent for the commandant to admit any ex soldier, sailor, or marine, now eligible under the law, who may be willing to pay into the home treasury all pension received by him over five dollars per month.

"(6) All rules conflicting herewith are hereby repealed.

" The following resolution was also adopted:

"*Resolved*, that the commandant is instructed to enforce the above rule strictly.

"2. In conformity with the above rule, all applicants for admission to this home, who are in receipt of a pension, must transmit with their application their pension certificate and voucher, for record and file in this office.

"3. Members of the home will be required, upon receipt of their pension checks, to turn over to the commandant all sums in excess of five dollars per month, who will give them a receipt therefor, and, in cases where there are dependents as set forth in the above rule, the money will be sent to them; in other cases, it will be kept on deposit, to be paid to the depositor on his final discharge from the home.

"By order of Major J. A. McKEE,

"Commandant.

"JAMES W. LONG, Adjutant."

It is insisted that this rule is in violation of Act No. 152, Laws of 1885, of this State, establishing the home, and of an act of the United States Congress, approved February 28, 1883, making void any pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest in any pension.

The answer asserts the validity of the rule; that it is within the power of the board, and is made necessary by experience; and contains the following statement:

"These respondents state that if said relators, and the other members or inmates of said Soldiers' Home, are permitted to receive and use as they please the entire amount of the pension money received by them from the government of the United States, without such use being controlled and guarded by rules and regulations adopted by said board of managers and enforced by said commandant, the effect of such use will be to destroy and subvert all discipline and good order in said Soldiers' Home, and will seriously, if not wholly, impair the usefulness of said Soldiers' Home for the purpose for which it was established and is now maintained; that it is the experience of said board of managers, while they have been charged with the control, government, and manage-

ment thereof, that, unless prevented in some way, a large per cent. of the inmates waste their pension money for intoxicating liquors and other purposes, injurious alike to the health of said inmates or members and to the order, discipline, and usefulness of said home."

The answer further states that this rule was adopted for the sole purpose of enforcing discipline and maintaining order, and that without such rule it would be impossible to do so, and that a similar rule has been adopted, and is now in force, in nearly every state soldiers' home in the United States.

Section 8 of Act No. 152 makes it the duty of the board to—

" Prepare, and carefully digest and mature, a system of government for said home, embracing all such rules, regulations, and general laws as they may deem necessary for preserving order, for enforcing discipline, for preserving the health of such disabled soldiers, sailors, or marines as may be received at this home."

Section 11 governs the admission, and provides for the admission of honorably discharged soldiers, sailors, and marines who are disabled by disease, wounds, or otherwise, and who have no adequate means of support, and by reason of such disability are incapable of earning their living, and who would be otherwise dependent upon public or private charity, "subject to the rules and regulations that shall be adopted by the board of managers to govern the admission of applicants to said home."

Gen. Averell, assistant inspector general of the National Home for Disabled Volunteer Soldiers, in his Report dated September 30, 1891, at page 109, says:

" The effects and results, beneficial and otherwise, of the pensions upon the welfare of members of the homes, the increased cares and anxieties of the home administration, and the various efforts made by them to minimize the evils arising from the misuse of money in the hands of men morally and mentally weak, are set forth

in the reports of the several homes, together with the expressions of opinion concerning remedial measures that are suggested. These opinions, emanating from men of the highest social worth and standing, who have had a large experience with the affairs of soldiers' homes, are entitled to an immediate and careful consideration."

This language was used in reference to state soldiers' homes, and the pensions of those who are inmates thereof. He then appends a statement of the provisions of each state home, from which it appears that in most of them the pension money is deposited subject to the disposition of the board of managers. The law of Congress requires the pensions of those who are inmates of the National Home to be paid to the treasurer of the home, to be disbursed for the benefit of the pensioners under the regulations established by the managers.

A large discretion was by this act lodged in the board. This is evident from section 9, as well as from the language of section 8. By section 9 the board was authorized to send one of its members to visit similar institutions for the purpose of obtaining information to guide them in framing rules and regulations for the government of the home. A very clear case of the abuse of this discretion must exist to entitle the courts to interfere. We think it is within the power of the board to require the pension money of the inmates to be deposited, if, in the words of the statute, they deem it necessary to preserve order, enforce discipline, or preserve the health of the inmates.

We do not, however, think that the statute confers upon the board the right to determine what relatives are dependent upon the pensioner for support, and to direct how much of such money shall be sent to such relatives. To this extent, therefore, rule 14 is void, and must be vacated. This provision is found in the second paragraph of the rule. The respondents, through their attorney,

say that they are willing to send the money, or such portions thereof as the pensioners may direct, to such dependent relatives as they may wish. Under this statement, and inasmuch as the chief executive of the State is the chairman of the board, we do not think it necessary to direct the issuance of the writ for this purpose.

The rule does not constitute an assignment or transfer of the pension, within the meaning of the act of Congress above mentioned.

The writ will therefore be denied, but without costs.

The other Justices concurred.