DANIEL O. BALL, *et al.*, v. S. B. EVANS, J. J. RUSSELL, A. T. BIRCHARD, N. A. MERRILL, C. L. DAVIDSON, and J. W. MORTON, Constituting the Commissioners of the Soldiers' Home, and J. R. RATEKIN, Commandant, Appellants.

**Soldiers' Home:** RULE: *Construction of statutes.* The board of commissioners of the Iowa Soldiers' Home may adopt a rule requiring all persons entering the home as members, to surrender any excess of pension over six dollars per month, to be paid over to their dependent relatives, if any, and, otherwise, to be credited to the contingent fund, under Acts Twenty-first General Assembly, chapter 58, section 2, empowering the board to determine the eligibility of applicants for admittance, and section 15, authorizing it to make rules and regulations for the management and government of the home, including those necessary to preserve order, enforce discipline, and preserve health.

SAME. Such rules are reasonable when taken in connection with the fact that the number of applicants unable to support themselves exceeds the capacity of the home.

SAME. Such rule does not violate United States revised statutes, sections 4745-4747, making void any pledge, transfer, or assignment of any claim, or interest to or in any pension.

SAME. The inmates of the Iowa Soldiers' Home will be required to obey reasonable rules adopted for its management and government, although such rules may not be necessary as to many of the inmates of the home.

SAME: *Injunction.* The enforcement of rules adopted by the board of commissioners of the Iowa Soldiers' Home, under a statute

authorizing them to make rules and regulations for the management and government of the home, including those necessary to preserve order, enforce discipline and preserve health, will not be enjoined, unless the board has clearly abused its discretion.

GRANGER, J., takes no part.

*Appeal from Marshall District Court.*—HON. D. R. HINDMAN, Judge.

WEDNESDAY, OCTOBER 7, 1896.

THIS is an action in equity, brought by certain inmates of the Iowa Soldiers' Home, for the purpose of setting aside certain rules adopted by the board of commissioners of said home, and to enjoin the enforcement of said rules. A temporary writ of injunction issued pending the hearing of the cause, restraining the defendants from appropriating any of the pension money belonging to any inmate of the home. At the conclusion of the trial, the court entered a decree making permanent said temporary injunction, and so extending it as to prohibit the commissioners from appropriating any of the pensions which they retain from the inmates to the maintenance fund or to the expense fund of the home, and directing that such part of the pensions as they shall retain, shall either be transmitted to the dependent relatives of said pensioner, or be retained to be delivered to the pensioner upon his discharge from said home, or to his heirs or assigns if he die before it is turned over to him. An order of mandamus was refused. The costs were taxed to the defendants. Both parties appeal, but as defendants first served their notice, they will be spoken of as "appellants."

*Milton Remley* and *J. J. Russell* for appellants.

*J. L. Carney* and *J. M. Parker* for appellee.

KINNE, J.—I. Plaintiffs, some twenty-six in number, are inmates of the Iowa Soldiers' Home at Marshalltown, Iowa. They prosecute this action, not only for themselves, but also on behalf of all others similarly situated, and who are affected by the rules of which they complain. They are honorably discharged soldiers, formerly in the service of the United States, and each and all of them are in receipt of pensions, granted by the general government, in excess of six dollars per month, which pensions were granted on account of physical disabilities incurred in the service of their country. They complain that the board of commissioners of the home have adopted, and do enforce, certain rules, hereinafter set forth, which they aver are unauthorized, illegal, inequitable, unjust, and which create conditions which operate unfairly upon all inmates who draw pensions of over six dollars per month. They aver that they have sought for a rescission of these rules from the board, without avail. Said rules are as follows: "*Second.* Any person admitted to the home having a pension exceeding $6 per month shall surrender all of said pension in excess of $6 per month to the commandant; and, if the person so surrendering his pension has dependent relatives, the money so surrendered shall be paid to such dependent relatives by the commandant; and, in case such pensioner shall have no dependent relatives, the excess of his pension over $6 per month shall be credited by the commandant to the support fund. *Third.* If any member of the home shall fail or refuse to surrender to the commandant the portion of his pension as herein required, such refusal or failure shall be deemed a violation of the rule, and the commandant shall give such offending member an honorable discharge." "Rule 25. Any person entering the home having a pension exceeding

$6 per month shall surrender all of said pension in excess of $6 per month to the commandant; and, if the person so surrendering his pension has dependent relatives, the money so surrendered shall be paid to said relatives by the commandant; and, in case such persons shall have no dependent relatives, the excess of his pension over $6 per month shall be credited to the contingent fund. The words 'dependent relatives,' as herein used, shall mean wife, minor children, and parents." "Rule 27. All members of the home who shall hereafter be charged and found guilty of violating the rules of the home, and who have a pension, shall surrender the entire amount of their pension to the commandant, who may, in his discretion, pay the same to the pensioner or to his dependent relatives (under rule 25), or turn the same over to the state, as in his judgment may seem to be to the best interest of the home." The defendants admit that plaintiffs are inmates of the home; that defendants are officers of the same; that the rules set out were adopted by defendant board of commissioners; that in some instances a part of the pension of some of the inmates of said home, in excess of six dollars per month, has been appropriated and applied to the contingent expenses of said home; and admit that the board has been requested to rescind said rules. They deny all other allegations in the petition. They aver that, under the laws of the state, they had power and authority to adopt said rules, and all rules necessary and proper for the government of said home; that they have the right and authority to determine as to the eligibility of applicants for admission to said home; and aver that all rules by them adopted are not only authorized, but such as experience has shown to be necessary and proper for the management and control of such an institution; that said rules have been found necessary, because said home will not accommodate all of the applicants;

that said plaintiffs, and other inmates of the home have full knowledge of said rules, and of defendants' authority to make them, and had such knowledge when they made application for admission to the home, and in their applications, which they signed, they expressly agreed to abide by said rules; deny that plaintiffs, irrespective of their means of support, and the amount of pension received, are entitled to be supported by the state at said home, without contributing to their own support, so far as they may be able; deny that the enforcement of said rules divides the inmates of said home into classes, but, on the contrary, under said rules, all the inmates of said home who have an income or pension, retain the same up to six dollars per month, and all receive their entire support from the said home, boarding, clothing and washing, and everything needed, without discrimination. They further aver that the facts stated in the petition do not entitle the plaintiffs to any relief. They also set out another rule: "Rule 26. All members of the home having no pension, or having not exceeding $4, will be provided with tobacco, and all other members will be required to provide themselves with tobacco."

II. But two questions arise upon this record: *First.* Had the board of commissioners of the Soldiers' Home authority to adopt the rules in question? And *second*, are they reasonable? Whatever powers have been conferred by statute upon the commissioners are found in chapter 58 of the Acts of the Twenty-first General Assembly, which act provided for the establishment of the home. There is no statute defining who are entitled to admission to the home as inmates. By section 2 of the act referred to, it is provided that "the board of commissioners shall determine the eligibility of applicants for admission to said home." Section 15 of the same act prescribes

the powers of the commissioners. It says that they "shall have the power to adopt a seal and make rules and regulations, not inconsistent with the laws and constitution of this state, for the management and government of said home, including such rules as they may deem necessary for the preserving of order, enforcing discipline and preserving the health of its inmates." The foregoing are all of the provisions of the statute relating to the powers of the commissioners, in so far as they pertain to the admission of inmates and the government of the home. As we understand counsel for plaintiffs, their complaint is that, in so far as these rules provide for the taking and appropriation of any part of the pension of any inmate of the home, they are unwarranted. The thought of counsel seems to be, that as the state has provided a home for disabled soldiers, it matters not what may be the ability of such persons to support themselves, on account of pension money received from the general government, they are entitled to retain all pensions received, and insist upon the state's supporting them besides. We discover nothing upon which to rest such a conclusion. Subject to the provisions of the act itself, and the laws and constitution of the state, as we have seen, the legislature reposed in the commissioners the power to determine who should be admitted to the home, and the circumstances under which those admitted might continue to share in the benefits of the institution. It appears, without conflict, in this case, that this home, under the existing rules, is full; that for much of the time, at least, more than five hundred disabled and diseased soldiers have been inmates; and that there are many who have applied for admission who cannot be taken in for lack of room. We think the legislature intended to provide a home for those disabled or diseased soldiers who were not possessed of sufficient means to support themselves, and

who, in the absence of this provision by the state, would be without the necessities and comforts of life. If a disabled or diseased soldier has ample means to support himself, either by reason of drawing a pension or because he is the possessor of property, or if he has relatives who are able and willing to properly support him, there can be no good reason for holding that the state should support him, and he be permitted to enjoy the benefits of his ample means, while others, equally deserving, and without means of support, are constantly knocking for admission, and must be refused, because the institution is filled. Such a construction of the law would largely defeat one of the chief purposes of its enactment, viz., the support of those who, by reason of their poverty, may be unable to support themselves. Under the provisions of the law, the board has ample power to determine the circumstances under which a soldier may be admitted to the home, and to say how much of the income he may be receiving, if any, he shall contribute towards his support while enjoying the benefits of the bounty of the state. While every man who entered the service of his country is entitled to all praise for his loyalty and patriotism, and while it is proper, just, and humane that the debt of gratitude which the nation owes to its defenders should never be forgotten,—while they should not be permitted to want for the necessities or comforts of life,—still, it must be remembered that the state is under no legal obligation to this class of its citizens other than rests upon it as to all of its citizens. The legislature, not standing upon its legal obligations, but prompted by feelings both patriotic and humane, has voluntarily undertaken to provide for the care and support of this class of citizens. The support offered by the state, and given at the home, is a gratuity, and not based upon any legal duty or contractual relations between the state, on the one hand, and the inmates

of this home, on the other; hence it follows that the power which confers the benefaction may, by itself or its agents, determine what the benefaction shall be, and the circumstances which must exist in order to entitle one to share the state's bounty. It has said that if you enter the home, and if you have an income, from pension or otherwise, which will in part support you, you shall agree to and shall contribute from it towards your support. This deprives the soldier of no rights. When he makes his application for admission to the home, he knows what the rules require. He then understands the conditions under which he may be a sharer in the bounty of the state. The support in the home being a gift upon the part of the state, it or its agents may make the enjoyment of the benefaction dependent upon any reasonable conditions. No one is compelled to accept the conditions and become an inmate of the home. One may decline, and remain outside. If, however, he sees fit, after knowing of the conditions and agreeing to them, to become an inmate of the home, he is in duty bound to obey the rules; and, if he fails or refuses so to do, he is in no situation to complain if he be honorably discharged from the home. When we have in mind the purpose of the legislature, and the fact that deserving, diseased and disabled soldiers are constantly seeking admission to the home, and must be refused for want of room,—men who are unable to support themselves,—it would seem that the rules complained of are just and humane, and in accordance with the spirit of the act creating the institution. In view of what we have said, there is no force in the claim that, since all soldiers do not receive the same amount as pension, more is taken from one for his support than from another. Every inmate surrenders just what he voluntarily agreed to when he entered the home.

III.   The legislature having conferred authority upon the board of commissioners to "make rules and regulations, not inconsistent with the laws and constitution of the state, for the management and government of said home, including such rules as they may deem necessary for the preserving of order, enforcing discipline, and preserving the health of its inmates," Courts should not interfere with the action thus taken, unless it is plainly manifest, that the board has abused the discretion with which it is vested. There is no such showing in this record. Without entering into a discussion of the evidence, it is sufficient to say, that it shows that such rules are necessary and proper for the management of the institution, and for enforcing discipline among its inmates. It is said, and is no doubt true, that many of the inmates are not addicted to habits which render some of the rules necessary as to them, and it is claimed that they should not be subject thereto. Manifestly, the rules must be general. Rules are only necessary because some will not conduct themselves properly without restraint. It is the same in organized society. Government exists, and laws are framed for the control of those who will not control themselves, and they work no injustice to those who, without their restraining influence, would do right. And, as in government, the good citizen is amenable to, and controlled by the legislation which is rendered necessary by the acts of the vicious, so in this home, all who receive its benefits, must respect and obey its rules, which are rendered necessary for the good of all of the inmates.

IV.   It is said that the rules in question violate the federal laws, in that they take from the soldier his pension.   Rev. St. U. S., sections 4745, 4747. These statutes provide that any pledge, mortgage, sale, transfer, or assignment of any right, claim, or interest to or in any pension that has been or may

hereafter be granted shall be void, and that no sum of money to become due any pensioner shall be liable to attachment, levy or seizure, but shall wholly inure to the benefit of such pensioner. These statutes are not violated by the rules in controversy. This was so held in the case of *Loser v. Board*, 92 Mich. 633 (52 N. W. Rep. 956). In that case, the court sustained rules similar to those here in controversy. So much of one rule was declared invalid as determined what relatives were dependent upon the pensioners for support, and directed how much of his pension money should be sent to such relatives. This holding was based upon the ground that the statute of Michigan did not authorize the board to determine that matter. Even that holding would not obtain here, for our statute authorizes the board to determine the question of the eligibility of applicants for admission to the home; and having determined by rule what disposition shall be made of the means possessed by inmates, and such rule being reasonable, and they having assented thereto when admitted, they are bound thereby so long as they continue to share in the benefits of the home as inmates. Again, these rules are in harmony with the federal statutes relating to the Naval Hospital, and as to soldiers accepting the benefits of the Soldiers' Home at Washington, and as to soldiers accepting the benefits of national homes for disabled volunteers. Rev. St. U. S., sections 4813, 4818–4820, 4819, 4832; 1 Supp. Rev. St. U. S., p. 410.

V. Other questions are discussed by counsel, which do not seem to us to be of controlling importance. What we have said disposes of all questions in the case. We hold that the rules are authorized, and are reasonable. Plaintiff's appeal is taken because the court below refused some of the relief asked by them. We have already passed upon the questions made in that appeal. A decree will be entered in the court

below, in harmony with this opinion. As to plaintiffs' appeal the decree below is affirmed. As to defendant's appeal the decree below is REVERSED.

GRANGER, J., takes no part.