# Channon's Estate.

*Wills—Probate—Witness—Disinterested witness—Charity—Interest in charity—Property right—Pecuniary benefit—Act of April 26, 1855, P. L. 328, 332—Odd Fellows' Home.*

1. Where a testator bequeaths a portion of his estate in remainder to the Odd Fellows' Home, a witness to the will who is not interested as a legatee or devisee under the will, is not an interested

witness within the meaning of the Act of April 26, 1855, P. L. 328, 332, merely because he is a member of the order of Odd Fellows, inasmuch as the parties concede the Odd Fellows' Home is not a charity.

2. Nor does such a witness derive "a pecuniary benefit or advantage from any part of the will," where it appears that the various lodges of Odd Fellows, of one of which the witness was a member, had a right to place one out of each hundred of its members in the Odd Fellows' Home as a resident, but that, in order to enter, the nominee must be voted in by his lodge, must be over sixty years of age, unable to support himself, and have been a contributing member of his lodge for five consecutive years preceding his application for admission, and that the witness in question was only forty-nine years of age at the time he witnessed the will, and that although he was then a contributing member in good standing, he was not and never had been an officer of the home, neither had he represented his lodge on the board of the institution, nor had any other connection with it. In such a case the witness did not possess, but simply had the capacity of attaining, the legal right to share in the benefits of the home; and this, under the circumstances, is too remote an interest to disqualify him as an attesting witness, under the Act of 1855.

3. Where the alleged disqualification arises from an interest in a charity, the interest which will affect the capacity of an attesting witness must be in the nature of a direct property right in the testamentary fund, or such immediate, certain, close and intimate connection with the legatee as leads to the inevitable conclusion that the witness will pecuniarily profit by the legacy, and, even then, the interest must exist at the time of execution and attestation of the will.

*Wills—Accumulations — Charities — Methodist Episcopal Home —Masonic Home—Act of April 18, 1853, P. L. 503, 507.*

4. The Methodist Episcopal Home for the Aged is a charity, inasmuch as it admits "others besides Methodists" to its benefits, although primarily admission is granted to members of that Church, and in this respect it differs from the Odd Fellows' Home whose benefits are limited to members of the Order of Odd Fellows only. For the same reason the Masonic Home of Pennsylvania is a charity. Being charities, the prohibition in the Act of April 18, 1853, P. L. 503, 507, against accumulations, does not apply to the Methodist Episcopal Home and the Masonic Home.

5. It does not alter the charitable nature of an institution that an admission fee is charged for entrance, where the money derived from such source is insufficient to run the home and the deficit is

made up by charitable contributions, or that its inmates, on admission, assign to the institution whatever property they may possess.

6. Where a testator gives the residue of his estate to a trustee to pay annuities of $500 each to his aunt and sister, who are his next of kin, and, upon the death of the survivor, to pay the principal and all accumulations of income to seventeen remaindermen, all except one being charities, the sister upon the death of the aunt, cannot claim, as next of kin and heir at law, that the principal amounting to $66,000 and the accumulations in the hands of the trustee, should be paid to her, on the ground that the will devised an accumulation of income for the benefit of the annuitants, and for this reason all the bequests in remainder must fail. Such contention is answered by the fact that no accumulations of income were required to pay these small annuities.

Argued January 15, 1920. Appeal, No. 150, Jan. T., 1920, by Margaret K. Prichett, from decree of O. C. Phila. Co., April T., 1909, No. 570, dismissing exceptions to adjudication in estate of Joseph Channon, deceased. Before Brown, C. J., Moschzisker, Walling, Simpson and Kephart, JJ. Affirmed.

Exceptions to adjudication of Gummey, J.

The account of the Fidelity Trust Company, trustee under the will of Joseph Channon, showed a balance of principal of $66,242.11 and accumulations amounting to $21,210.53. Margaret K. Prichett, next of kin and sole heir at law, claimed both funds. Her claim was disallowed, and exceptions filed by her to the adjudication were dismissed in an opinion by Gest, J., 28 Pa. Dist. R. 479; 47 Pa. C. C. R. 637. Margaret K. Prichett appealed.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were dismissal of exceptions and entry of decree.

*Isaac Hassler,* with him *Henry W. Scarborough,* for appellant.—The evidence clearly establishes the interest of the witness James Moore, contrary to the Act of 1855,

in the Odd Fellows' Home: Kessler's Est., 221 Pa. 314; Provident Life & Trust Co.'s App., 249 Pa. 389; Arnold's Est., 249 Pa. 348; Shoemaker's Est., 235 Pa. 402; Leech's Est., 236 Pa. 57.

The accumulations are void and being in the residuary estate pass to the heir at law and next of kin, Margaret K. Prichett: Nagle's Est., 63 Pa. Superior Ct. 93.

Besides the one-seventeenth of the accumulations in respect of the Odd Fellows' Home, there should at least have been awarded to Margaret K. Prichett as heir at law and next of kin the one-seventeenth of the accumulations in respect of the Methodist Episcopal Home for the Aged and the one-seventeenth in respect of the Masonic Home. These institutions, though benevolences, are not charities: Sharp's Est., 71 Pa. Superior Ct. 34; Cresson's App., 30 Pa. 437; Phila. v. Fox, 64 Pa. 169; Phila. v. Masonic Home, 160 Pa. 572.

*H. Gordon McCouch,* for Fidelity Trust Company, appellee.

*Horace M. Rumsey,* for Methodist Episcopal Home for the Aged of Philadelphia, appellee.

*Joseph J. Tunney* and *Murdoch Kendrick,* for Masonic Home of Pennsylvania, appellee.

*C. B. D. Richardson,* for Odd Fellows' Home, appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 23, 1920:

Testator gave the residue of his estate in trust to pay two annuities, of $500 each, to his aunt, Amelia R. Wood, and his sister, Margaret K. Prichett, for life; upon the death of the survivor of these annuitants, he bequeathed the principal, together with all accumulations of income, to seventeen remaindermen, share and share alike.

At the audit of the executors' account, in 1909, no question concerning the gifts in remainder being raised, the orphans' court, after directing payment of the annuities, formally awarded the principal and income on hand to the trustee named in the will, for the uses and purposes declared by the testator.

Amelia R. Wood, the aunt, having died, the trustee filed an account, showing a balance of principal amounting to $66,242.11, and $21,210.53 accumulated income. Margaret K. Prichett, the sister, claimed the whole of these funds, as next of kin, contending that one of the persons who proved the will, James Moore, was not a disinterested witness, and, since testator died prior to the recent legislation, changing the rule in such cases (Acts of June 7, 1911, P. L. 702, and June 7, 1917, P. L. 403, 406, 415), all his charitable gifts failed; further, that, for other reasons, the provisions of his will concerning accumulations were void, either in whole or in part, as we shall discuss more fully further on in this opinion.

The orphans' court held the time to question the validity of the charitable bequests was upon the adjudication of the executors' account, and, this not having been done, the award then made "settled everything involved in the right of the trustee to take title to the estate"; that tribunal therefore declined to pursue the question whether James Moore was a disinterested witness to the will. It is not our intention to suggest the court below erred when it thus made this branch of the case turn upon the doctrine of res adjudicata,—we indicate no opinion in that regard; but, since convinced Moore is a "disinterested" witness, within the meaning of this term, as used in section 11 of the Act of April 26, 1855, P. L. 328, 332, we prefer to rest our decision solely on that ground.

The Act of 1855 requires a bequest for "charitable uses" shall be "attested by two credible and, at the time, disinterested witnesses." Moore is alleged to have been

so interested in the Odd Fellows' Home, one of the seventeen remaindermen, as to disqualify him as a witness; but, to begin with, it was decided in Sharp's Est., 71 Pa. Superior Ct. 34, 36, the Odd Fellows' Home is not a charity, and this decision seems to be accepted by all parties in interest as the law of the present case, especially by appellant, who, on that theory alone, takes certain accumulations, which otherwise would go to such home.

In Kessler's Est., 221 Pa. 314, we call attention to the fact that (pp. 320, 321) "the Act of 1855 is a remedial statute," and the evil it has in mind is to prevent "the importunities of designing persons," interested in charities, at or near the time of the impending death of a testator. Then (p. 323), we say: "The words 'disinterested witnesses,' used in this act, must be read and understood in connection with the subject-matter of the statute, the evils to be avoided, the requirements intended to safeguard the rights and property of persons approaching death, and the remedy to be provided in such cases. When so read and understood, the interest which disqualifies a witness under the act is such an interest as appears to exist at the time of the execution of the will, either by the terms of the will itself or by reason of the attesting witness being then interested in the religious or charitable institutions for which provision is made by the testator, or both, or either, as the case may be...... If the attesting witness be interested as legatee or devisee under the will, or is to derive a pecuniary benefit or advantage from any part of it, or if he is interested at the time of attestation in a religious or charitable institution to be benefited thereby, he is not disinterested within the meaning of the statute."

While the writer of the opinion in Kessler's Estate criticizes some of our earlier cases, as taking too narrow a view of the Act of 1855, yet neither there, nor in any other instance called to our attention, have we held that the incapacitating interest of a witness may be less than

a present, vested, pecuniary right, where, as here, the alleged disqualification arises from the fact that the person in question is said to derive a pecuniary benefit or advantage from the will.

In Jeanes's Est., 228 Pa. 537, 541, 542, citing the Kessler case, we state: "A reasonable meaning is to be given to the words 'disinterested witnesses'......The interest which......disqualifies a witness from attesting a will containing religious or charitable bequests must be a present, certain and vested one—it must not be uncertain, remote or contingent."

The other authorities upon the point in hand (including Comb's App., 105 Pa. 155; Jordan's Est., 161 Pa. 393; Stinson's Est., No. 1, 232 Pa. 218; Shoemaker's Est., 235 Pa. 402; Kelly's Est., 236 Pa. 54; Leech's Est., 236 Pa. 57; Arnold's Est., 249 Pa. 348; Palethorp's Est., 249 Pa. 389, and Palethorp's Est., Stewart's App., 249 Pa. 411) contain nothing inconsistent with the law as we have cited it from Kessler's Estate and Jeanes's Estate.

James Moore is not interested as a legatee or devisee under the will, nor was he interested at the time of its attestation in "a religious or charitable institution" which would benefit thereby; this latter is plain, because, as before said, the decision in Sharp's Estate,—that the Odd Fellows' Home is not a charity—is accepted by all parties in interest.

The remaining question is, Can it be held that the witness "derives a pecuniary benefit or advantage from any part of the will"? If so, he is not disinterested; but, in passing upon this point, it must be remembered that "a reasonable meaning" is to be given to the word "disinterested," and the interest which disqualifies is a "present, certain and vested one." Hence, the question is reduced to this,—At the time James Moore attested Joseph Channon's will, did the former have such a vested interest in the Odd Fellows' Home that he can reasonably be held to derive a pecuniary benefit or advantage

through or by reason of testator's legacy to that institu-
tion; or is his pecuniary interest so uncertain, remote
and contingent as not to disqualify him as a witness?

It must be kept in mind that the alleged interest we
are investigating is not in a charitable institution which
is to profit by the will, but simply one connected with an
ordinary pecuniary legacy; because of which,—under an
old rule, now changed by statute (Acts of 1911 and 1917,
supra),—appellant attempts to destroy all the charitable
features of testator's will. No matter what the govern-
ing rule may be where the alleged disqualification arises
from an interest in a charity, we again say, at the cost
of reiteration, under present circumstances the interest
which will affect the capacity of an attesting witness
must be in the nature of a direct property right in the
testamentary fund, or such immediate, certain, close and
intimate connection with the legatee as leads to the in-
evitable conclusion that the witness will pecuniarily
profit by the legacy; and, even then, the interest must
exist at the time of execution and attestation of the will.
Let us see if any such incapacitating right or interest
is present here.

The Odd Fellows' Home is a corporation, chartered
under the laws of Pennsylvania, to support aged and
indigent Odd Fellows. Certain of the lodges and en-
campments of the Independent Order of Odd Fellows be-
long to this corporation, among others, the lodge of
which James Moore is a member. Each of these lodges
and encampments elect one member annually to repre-
sent them respectively in the affairs of the corporation;
and each of them pays to the corporation a regular con-
tribution, or tax, at the rate of one cent a week per mem-
ber on their roll. Because of this payment, every lodge
or encampment, in good financial standing with the
home, has the right to place one out of each one hundred
of its members in the institution, as a resident; but, in
order to enter, the nominee must be over sixty years of
age, unable to support himself, and must have been a

contributing member of his lodge or encampment for
five consecutive years preceding the latter's application
for his admission. All of which means, in law, that a
contributing lodge or encampment has a contractual
right to place a varying number of its members, possess-
ing designated qualifications, in the home, but no indi-
vidual member of a lodge or encampment has a right
of entrance, contractual or otherwise, or even a certainty
of acquiring such right.

At the time James Moore attested Joseph Channon's
will, and when the latter died in 1908, the witness was
but forty-nine years of age; although he was then a con-
tributing member of his lodge, in good standing, he was
not and never had been an officer of the Odd Fellows'
Home, neither had he represented his lodge on the board
of that institution nor had any other connection with it.

From the facts we have recited, relating to the status
of Moore, it may readily be seen that his interest in the
Odd Fellows' Home, so far as the possibility of deriving a
pecuniary benefit or advantage therefrom is concerned,
was most uncertain and remote, depending upon the
happening of many contingencies. In other words, when
Moore witnessed the will, he had no legal right to enter
the home, or even to apply for entrance, but simply be-
longed to a class, as one of which, eleven years hence,
if he possessed certain other qualifications, and his lodge
selected him as its nominee for the place, he might be
entitled to enter the institution. That is to say, he did
not possess, but simply had the capacity of attaining,
the legal right to share in the benefits of the home; and
this was too remote an interest to disqualify him as an
attesting witness, under the Act of 1855.

The next question concerns the validity of certain ac-
cumulations, under section 9 of the Act of April 18,
1853, P. L. 503, 507. In this connection, it may be said,
all the remaindermen were conceded to be charities, ex-
cept three—the Odd Fellows' Home, the Methodist Epis-
copal Home and the Masonic Home. As previously

stated, the decision in Sharp's Estate that the first of
these is not a charity, is accepted as the law of this case;
but appellant contends the orphans' court should have
held the other two institutions, just named, not to be
charities, and awarded to her, as next of kin, the accu-
mulations bequeathed to them.

The final opinion of the court below satisfactorily
disposes of this branch of the case, and we shall adopt it
as the expression of our views, simply adding a few ap-
propriate authorities. Judge GEST there states: "The
Methodist Episcopal Home for the Aged is a charity
within the act of assembly [Daly's Est., 208 Pa. 58]; its
organization and administration are quite different from
those of the Odd Fellows' Home, the benefits of which are
conferred [only] upon those members of the order of Odd
Fellows who [attain] a legal right to share in them.
The fact that admission to the Methodist Episcopal
Home is primarily granted to persons who have been
members of the Methodist Episcopal Church for a cer-
tain period, is no objection [Price v. Maxwell, 28 Pa.
23], particularly as this rule is not adhered to in special
cases of merit, . . . . . others besides Methodists . . . . . . be-
ing admitted on nomination by a member of the church.
The fact that an admission fee is charged is likewise no
reason to the contrary; for the money derived from such
source is insufficient to run the home, and the deficit is
made up by charitable contributions: Phila. v. Masonic
Home, 160 Pa. 572. Likewise it does not alter the chari-
table nature of the institution that its inmates, on ad-
mission, assign to the home whatever property they may
have [Brooks v. Hastings, 192 Pa. 378, 388]; such a re-
quirement is not unusual, but we find no case which
holds it renders an institution noncharitable. The sta-
tus of the Masonic Home was considered in Phila. v. Ma-
sonic Home, 160 Pa. 572, where the question was as to
the liability of the home for taxation under the Consti-
tution, sec. 1, art. IX, and the Act of May 14, 1874, P. L.
158, . . . . . . the home claiming to be exempt as an institu-

tion of purely public charity. The Supreme Court held that the Masonic Home was a charity, but not a 'purely public charity.' The distinction is an obvious one, and the opinion of the Supreme Court, in its discussions, shows clearly enough that the home is for a charitable purpose within the meaning of the act of assembly which we are discussing."

Before taking up the next matter which calls for our attention, we note the fact that both the conduct and the charter of the Methodist Episcopal Home show it to be an institution devoted not solely to the care of aged members of the Methodist Episcopal Church, but also of "other aged persons whose needy circumstances require such aid"; therefore, it, like the Masonic Home, is a charity within the purview of the legislation here involved.

We cannot follow counsel for appellant in their contention that the will directs an accumulation of income for the benefit of the annuitants, and, for this reason, all the bequests in remainder must fall. The adjudication, hereinbefore referred to, awarded the trustee something over $66,000, from the income of which the will directs the payment to two annuitants of the comparatively small sum of $500 per annum each, giving the entire fund, subject only to these payments, "together with the accumulation of income," to the seventeen remaindermen. This is a rational reading of testator's words; for it required no accumulations of income to pay the two annuities—which, in itself, sufficiently answers the present contention: Lennig's Est., 154 Pa. 209.

It is not essential to the decision of this case that we pass specifically upon the 57 assignments of error; all of them in conflict with the views here expressed are overruled and the others are dismissed.

The decree is affirmed at cost of appellant.