# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

## Irvine's Estate.

*Will—Execution—Witnesses—Devise to religious and charitable uses—*
*Act of April 26, 1855, P. L. 328.*

A will containing a charitable or religious bequest to be valid must be executed precisely according to the statute.

The purpose of the Act of April 26, 1855, P. L. 328, was to establish a higher degree of proof as to the execution of a will containing a charitable or religious bequest than for other wills; and also to require such a will to be executed at a time when the testator might be in the full possession of his faculties, and not influenced by unscrupulous and designing persons when he was in the immediate presence of death. To attest or witness such a will, the witness must be present when the writing is signed and thereby becomes a will, or the testator may after he has affixed his signature acknowledge it to be his act in the presence of the witnesses.

Where one of the attesting witnesses to a will containing religious bequests signed it before the testator and out of her presence, and the other attesting witness signed it without seeing the signature of testator or knowing whether she had signed it or not, the will is not executed as provided by the Act of April 26, 1855, P. L. 328, and the religious bequests are void.

Argued Feb. 25, 1903. Appeal, No. 16, Jan. T., 1903, of Allie L. Appley, from decree of O. C. Wayne Co., No. 235, Docket L, making distribution of the estate of Allamanda D. Irvine. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Exceptions to the report of R. M. Stocker, Esq., auditor. Before PURDY, P. J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in awarding the residue of the estate to the Board of Home and Foreign Missions of the Presbyterian Church and to the Presbyterian Church of Cochecton, N. Y.

*Homer Greene*, for appellant.—To attest is one thing, to subscribe is another: Reed v. Watson, 27 Ind. 443.

While most of the definitions imply a subscription by the witness as a part of the act of attestation, all of them make it an absolute necessity that the witnesses should have actually witnessed the act of execution. Indeed, without such physical evidence on the part of the witness he does not, under the definitions, attest the will at all.

No circumstances can obviate the necessity of an attesting witness actually seeing the testator sign his name to the will, or else receiving from him subsequently a distinct acknowledgment and declaration that it is his signature: Mickle v. Matlack, 17 N. J. L. 86.

*H. Wilson* and *Alfred Hand*, with them *A. T. Searle*, for appellee.—The fact that a witness signs before the testator does not avoid compliance with the law, where the testator knows all about it: Miller v. McNeill, 35 Pa. 217.

The courts of this state have liberally construed statutes relating to the execution of wills : Eyster v. Young, 3 Yeates, 511 ; Rohrer v. Stehman, 1 Watts, 442 ; Hight v. Wilson, 1 Dall. 94 ; Knox's Estate, 131 Pa. 220 ; Miller v. Carothers, 6 S. & R. 215.

OPINION BY MR. JUSTICE MESTREZAT, May 4, 1903 :

Mrs. Allamanda D. Irvine, the widow of Charles Irvine, resided in Damascus township, Wayne county, Pennsylvania, for many years prior to her death, which occurred January 11, 1901, while she was temporarily in Florida. After her death there was found among her papers, her last will and testament bearing date of August 14, 1896, to which was subscribed the

names of Mrs. Louisa T. Brittain and Miss Carrie A. Tyler, as witnesses. The will was admitted to probate by the register of Wayne county on the affidavits of the two subscribing witnesses and of three other witnesses that the signature of the testatrix affixed to it was genuine. In the affidavit of Miss Tyler, it is said : " Deponent further says that she did not see the said Allamanda D. Irvine sign her name to the instrument nor does she know when the said name was so signed, and that she does not know whether or not the signature of the said Allamanda D. Irvine was upon the said instrument when she, the deponent, signed her name thereto as a witness." The affidavit of Mrs. Brittain contains, inter alia, the following : " Deponent further says that at the time she, the deponent, signed her name as a witness to the execution of said will, the said will had not yet, as a matter of fact, been either seen or executed by the said testatrix, nor had the name of the said Allamanda D. Irvine yet been signed thereto ; . . . . and that at the time she so wrote, prepared and signed her name as a witness to said will, the said Allamanda D. Irvine was at her own home in said Damascus township, and did not see nor execute said will until some time after deponent had subscribed her name to said will as a witness, but how long after the testatrix executed said will or in whose presence the testatrix signed her name to said will, or where or under what circumstances, the deponent does not know."

The facts regarding the preparation and the execution of the will, as found by the auditor and approved by the trial court, are as follows : " Some time in the first part of August, 1896, Mrs. Allamanda D. Irvine, widow of Charles Irvine, of Damascus township, Wayne county, Pennsylvania, requested Mrs. Louisa T. Brittain to write her will for her. Mrs. Brittain had a few years before this removed to Ridgebury, Orange county, New York, and was now on a visit to W. W. Tyler, her father's home. She called on her old neighbor, Mrs. Irvine, whom she had known from childhood, and while at the home of Mrs. Irvine, when no one else was present, Mrs. Irvine gave Mrs. Brittain directions how she wanted her will made, which instructions Mrs. Brittain reduced to writing. She further requested Mrs. Brittain to sign it as a witness and return it to her by registered letter, after it was prepared. Mrs. Brittain

returned to her home in Ridgebury and drew the will as instructed, and subscribed as a witness as requested, August 14, 1896, and sent the paper writing to Mrs. Irvine by registered letter, and took a receipt therefor. Miss Carrie E. Tyler, now Mrs. Ellison, who was postmistress, received the parcel in 1896, she does not remember the exact date, and delivered it to Mrs. Irvine. A few days afterward, Mrs. Irvine, who resided only about one fourth of a mile from Miss Tyler's, came to Miss Tyler with a paper writing, which she said was her will, requesting Miss Tyler to sign it as a witness. She signed as requested. . . . Both of the subscribing witnesses were familiar with the signature of Mrs. Irvine, and recognized it as being her true signature, but neither of the witnesses saw Mrs. Irvine sign her name to the will. Mrs. Brittain knows the name of Mrs. Irvine was not written when she subscribed as a witness and Mrs. Ellison does not know whether it was there or not. She did not examine the will in any way, she says."

Letters testamentary were granted to Mrs. Allie L. Appley, the only daughter and heir of the testatrix, in February, 1901. She filed an account as executrix in January, 1902, and on the confirmation thereof an auditor was appointed to make distribution of the balance in her hands. After making certain bequests and disposing of some life interests in her estate, the testatrix gave the residue thereof to the Boards of Home and Foreign Missions of the Presbyterian Church in the United States of America, and to the Presbyterian Church of Cochecton, N. Y. Before the auditor, Mrs. Appley claimed the legacies bequeathed to religious uses on the ground that they were void by reason of the will not having been executed in accordance with the Act of April 26, 1855, Purd. Dig. 2104, pl. 23. The auditor and the learned court below found against the claim and awarded the fund as directed in the will. The correctness of this ruling is the only question raised by the assignments of error.

Section 11 of the act of 1855 provides, inter alia, as follows: " No estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person, in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and at the time, disinterested witnesses, at least one calendar month before the

decease of the testator or alienor; and all dispositions of prop-
erty contrary hereto, shall be void and go to the residuary
legatee or devisee, next of kin, or heirs, according to law."

This statute, it will be observed, became a law of the common-
wealth twenty-two years after the Wills' Act of 1833. The
6th section of that act requires a will to "be proved by the
oaths or affirmations of two or more competent witnesses."
Under this act neither subscribing nor attesting witnesses are
necessary to give validity to a will. The proof of the signature
of the testator by at least two competent witnesses is the only
requisite imposed by the statute. This was well understood
when the act of 1855 was passed. It relates to and affects the
execution of such wills only as bequeath or devise estates for
religious or charitable uses. We must assume that as to wills
containing provisions for these uses, the legislature intended
to change the manner of execution prescribed by the act of
1833, otherwise, the legislation would be to no purpose. This
intention is clearly disclosed by the language used in the act
of 1855. It requires a will disposing of estates for charitable
or religious uses to be "attested by two credible, and at the
time, disinterested witnesses;" and such wills must be thus ex-
ecuted "at least one calendar month before the decease of the
testator." Neither of these requirements, as we have seen, is
necessary to the validity of a will under the prior act of 1833.
The simple proof of the signature of the testator by two or
more witnesses, not necessarily attesting witnesses, is sufficient
under the terms of that act. The difference in the language
of the two acts shows that the purpose of the latter legislation
was to establish a higher degree of proof as to the execution
of a will containing a charitable or religious bequest; and also
to require such a will to be executed at a time when the tes-
tator might be in the full possession of his faculties and not
influenced by unscrupulous and designing persons when he is
in the immediate presence of death.

The statute requires the will to be "attested by two cred-
ible witnesses." This language presupposes the existence of
a writing signed by the testator at the time of the attestation.
The writing does not become a will under the act of 1833 until
it is "signed by him (testator) at the end thereof." It re-
quires the signature of the testator to make it his act and to

transform the work of the scrivener into the will of the testator. To attest or witness the will, the witness must be present when the writing is signed and thereby becomes a will, or the testator may, after he has affixed his signature, acknowledge it to be his act in the presence of the witnesses. The meaning of the language employed in the statute exacts these requirements, and no other rational interpretation can be placed upon it. Unless the witnesses are present at the execution of the will or the signature of the testator is acknowledged in their presence, they have not the knowledge to enable them to testify to the date of, or circumstances attending, its execution, which, if in controversy, it was the intention of the statute should be made to appear by those asserting the right to bequests for religious or charitable uses. Mere knowledge, therefore, of the testator's handwriting or of his signature by a person does not give him the statutory qualifications of a witness.

The facts in the case at bar were found by the auditor and are not in dispute. It does not appear when the will was signed by the testatrix. Neither of the subscribing witnesses saw her sign nor knows when she did sign it. They testify that they do not know when, where or under what circumstances it was signed. Mrs. Brittain drew the will and attached her signature to it before the testatrix had signed it. Miss Tyler, the other subscribing witness, says she does not know when the testatrix signed the will nor whether she had signed it or not when she subscribed her name as a witness. The two witnesses, therefore, had the same, and no other, knowledge of the execution of the will than the three other witnesses had who appeared before the register to prove the will. Although subscribing witnesses, they were not attesting witnesses, and, before the register and auditor, identified the testatrix's signature solely from their knowledge of her writing. This testimony was sufficient proof of the execution of the will under the act of 1833, but did not meet the requirements of the act of 1855. No witness saw the testatrix sign the will, nor did she acknowledge the signature attached to the will to be her signature. There was, therefore, no attesting witness called to prove the execution of the will and the instrument was necessarily inoperative as to the bequests to religious uses.

The auditor and court below held " that while the letter of

the act of 1855 has not been complied with, the spirit and in-
tent is in no way violated by the attestation and probate of
this will." The auditor found that the testatrix was in perfect
health at the time the will was presumed to have been signed,
and that no undue influence or fraud "such as is contemplated
in the act of 1855" had been practiced upon her. It should
have occurred to the learned auditor that under the facts dis-
closed these matters were not in issue in this case, and that
they did not control the disposition of it. The question for
his determination was whether in the execution of this will
there had been a compliance with the provision of the act of
1855. That was the issue before him and the court below, as
it is here. The legislature having declared the manner in which
a will must be executed to carry bequests to religious uses, it
was not within the power or authority of the trial court to dis-
regard the legislative mandate and substitute another mode of
execution of the instrument which to the court might appear
equally efficient in carrying out "the spirit and the intent" of
the legislative will. "Nothing is better settled," says the court
in Duffie v. Corridon, 40 Ga. 122, "than that a will, to be good,
must be executed precisely according to the statute." When
it was found as a fact, as it virtually was conceded to be, that
the will of Mrs. Irvine had not been executed in compliance
with the act of 1855, the bequests to the religious uses should
have been disregarded and the fund applicable thereto should
have been distributed to the parties named in the statute.

The decree is reversed, and the record is remitted to the
court below that distribution may be made in conformity with
the views expressed in this opinion.