## Darr's Estate

Before Trimble, P. J., Mitchell, and Chalfant, JJ.

*James M. Magee*, for accountant.

*E. W. Arthur*, for heirs of Eliza Sauers.

*Emmett T. Graybill*, for City of Massillon, Ohio.

*Jason Richardson*, for City of Massillon, Ohio, and Elyria Home for the Aged, Elyria, Ohio.

*Henry W. Harter*, for Aultman Home for Aged Women, Canton, Ohio.

PER CURIAM, April 5, 1940. — Maria E. Warwick created a revocable trust for individuals, she being one, terminable upon their deaths, which have occurred, with a gift over to a charity, and named George W. Darr as trustee. She delivered to him the res. The trust has terminated and the fund is now ready for distribution. The remainder is distributable as follows:

". . . the whole of said bonds and property, both principal and interest, shall be applied by the trustee hereunder towards the endowment, or towards the support of a home for the aged ladies of Massillon, Ohio, in such manner and upon such terms as the trustee hereunder shall hereafter provide."

Darr executed the trust agreement in New York. To the left of his signature appears the following: "Witness Amos Jaffee". On the next page there is a formal acknowledgment as follows:

"Personally appeared before me, a notary public in and for the State aforesaid, residing in the City of New York, George W. Darr, who acknowledged the foregoing indenture or deed of trust to be his act and deed to the end that the same might be recorded as such. Witness my hand and notarial seal this 23d day of March, A. D. 1903.

C. W. ROTCHILD<br>
Notary Public. No. 42<br>
King Co.<br>
Certificate filed in<br>
New York County."

The auditing judge held that the signatures of the attesting witness and the notary public were a compliance with the Act of April 26, 1855, P. L. 328, requiring the signature to a trust settlement to be "attested by two credible and at the time disinterested witnesses". Cases supporting and denying the validity of like attestations were cited: In re McDonough's Estate, 201 App. Div. 203, 193 N. Y. Supp. 734 (1922); Irvine's Estate,

206 Pa. 1; Kessler's Estate, 221 Pa. 314, 320; Spink v.
Guarantee Bank & Trust Co., 181 Ala. 272, 61 So. 302
(1913) ; Nashville C. & St. L. Ry. Co. et al. v. Hammond
et al. (Miss. 1894), 15 So. 935; Adams v. Norris, 23 How.
64 U. S. 353 (1859) ; Murray v. Murphy et al., 39 Miss.
214 (1860) ; Tilton, Exec., v. Daniels, 79 N. H. 368
(1920) ; Keely v. Moore, supra; Hull v. Hull et al., 117
Iowa 738 (1902) ; Carson's Estate, 241 Pa. 117; Hick-
man's Estate, 308 Pa. 230.

Our attitude is to sustain all charitable trusts when
possible. In this case there is a clear unequivocal expres-
sion of a desire to aid the charity designated. That much
may be said of Paxson's Estate, 221 Pa. 98, where the
will contained the usual attestation clause but the in-
tended witnesses were wanting. We have considered the
facts fully and after a review of the cases we believe that
the act has not been strictly complied with in the creation
of the instant trust.

The signature of the notary was for the single pur-
pose of recording, not attesting. Darr acknowledged the
foregoing "Indenture or deed of trust to be his act and
deed to the end that the same might be recorded as such."
When the trust is read in its entirety, we have no difficulty
in coming to the conclusion that there was in the contem-
plation of Mrs. Warwick, the creator of the trust, the
possibility of a conversion of the property transferred by
her and reinvestments of the proceeds in real estate be-
cause in the agreement the property is vested in the trus-
tee in trust "to pay the income, interest, rents, issues and
profits derived from said bonds and property."

In Keely v. Moore, 196 U. S. 38, the certificate of
acknowledgment written in the margin of the second and
last page of the will was as follows:

" 'I hereby certify that William Thomson, consul at
Southampton for the United States of America, attended
before me this 25th day of February, 1886, and acknowl-
edged the foregoing paper-writing contained in two sheets
of paper as his last will and testament and that the

signature "Wm. Thomson" at the foot thereof is in the proper handwriting of the said William Thomson.

"JOHN H. COOKSEY,
"Vice Consul United States of America.' "
[Seal U. S. Consul]

The Supreme Court, in commenting upon this, said (p. 42) :

"The certificate was probably prepared under the belief that wills, like deeds, made in a foreign country must be executed and acknowledged before some foreign official, or 'before any (some) secretary of legation or consular officer of the United States,' (Rev. Stat. section 1750; Compiled Statutes D. C. chapter 58, section 6) ; but as such certificate was unofficial and contributes nothing as such to the validity of the will, it can only be looked upon as the affirmation of an ordinary witness to the facts therein stated. No particular form of attestation was necessary, as appears to be the case in England and in several States of the United States, and if the certificate of Cooksey had been written at the foot of the will and signed by himself and by the two witnesses, Lomer and Linthorne, it would have been a sufficient attestation. How, then, can it be regarded as insufficient when an attestation in one form is signed by two witnesses and an attestation in another form by a third? Bearing in mind that the certificate, if given any force at all, must be considered an attestation, we do not think that the fact that it may have been written and signed under a mistaken impression as to its necessity and purpose, vitiates it as an attestation. What use was intended to be made of it is immaterial, if it were useless for any purpose as an official certificate. The facts certified are appropriate to the attestation of the instrument, and, if true, we see no reason for holding it to be invalid as an attestation, because it was signed under the impression that it was necessary for some possible purpose as a cer-

tificate." Since recording was the purpose of the acknowledgment in the present case, the attestation is incomplete.

We are influenced to a reversal of the decree by the very positive language of the Supreme Court with respect to the requirements of the Act of April 26, 1855, P. L. 328, and its successors. In Hartman's Estate (No. 1), 320 Pa. 321, and in Gregg's Estate, 213 Pa. 260, where insufficient time had elapsed between the making of the will and the death of testator to give validity to the trusts for charities, the court said (p. 264) :

"The act . . . must be literally read and strictly construed, if effect is to be given to the legislative intent, and cannot be stretched to save a bequest clearly intended by the act to be void. Charitable or religious institutions claiming bequests or devises must bring themselves within it. As between them and the next of kin of a testator there are no equities, and the rights of each are such only as are given by the statute."

In Irvine's Estate, 206 Pa. 1, 5, it is said that the purpose of the Act of 1855 was "to establish a higher degree of proof as to the execution of a will containing a charitable or religious bequest".

Since the deed of trust does not meet the strict requirements of the Act of 1855, supra, it is void and the property composing the trust res forms part of the estate of Maria E. Warwick and is distributable under the residuary clause of her will: Wood's Estate, 209 Pa. 16; Bricker's Estate, 335 Pa. 300. We have taken testimony to show who are the residuary legatees under the will of Mrs. Warwick. The exceptions of the Elyria Home for the Aged of the Northeast Ohio Conference of the Methodist Church will be dismissed, the exceptions of the residuary legatees under the will of Maria E. Warwick sustained, the decree of this court dated January 30, 1940, reversed, and distribution made to the residuary legatees aforesaid.