# Combs' and Hankinson's Appeal.

1. A "disinterested" witness to a will within the meaning of the statute of April 26, 1855, (P. L. 332), is one who has no legal interest; and a "credible" witness is one not disqualified to testify. An employee of a charitable institution, to which property has been bequeathed, is a "disinterested" witness to the will, within the meaning of said Act.

2. When a testatrix, who is unable either to read or write, executes a will in favor of a charitable institution by setting her mark thereto, it is unnecessary that the will be read to her in the presence of the subscribing witnesses. Other persons may testify that the testatrix knew the contents of the instrument. Nor is it essential in any case to the

probate of a will to prove more by the witnesses who were present at its execution, than the identity of the instrument, that they saw the testator subscribe or make his mark, and at the time of the doing thereof he was of sound disposing mind, memory and understanding.

3. Whether or not an executrix is competent under the said Act of 1855, to attest such a will, she is competent under the Act of March 27, 1865, (P. L., 38), to testify that the will was drawn by the testatrix's direction, and was read to her before she affixed her mark.

4. When the jurat to the Register's certificate of the probate of a will states that the witnesses were sworn, it is immaterial that the word "oaths" or "affirmation" is omitted in the body of the certificate.

5. An issue devisavit vel non will not be granted, if, upon the whole evidence on both sides, a verdict against the will would not be permitted to stand.

January 24th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia county:* Of July Term, 1883, No. 201.

Appeal by George Combs and Isaiah Hankinson from a decree of said court dismissing their petition to annul the letters testamentary and the probate of the alleged will of Lucy Taylor, deceased; and refusing to grant an issue devisavit vel non, to test the validity of said alleged will.

The facts were as follows: Lucy Taylor, a colored woman, about eighty years old, unable to read or write, died on February 14th, 1880, at the Home for Aged and Infirm Colored Persons, where she had been a boarder for some months. By her will, dated October 29th, 1879, she left all her property to the said Home. Previous to this, in 1867, while she was in the employ of Andrew D. Cash, she had made a will by which she left certain legacies to Combs and Hankinson, and the residue of her estate to the daughters of Mr. Cash. The will of October 29th, 1879, was executed by the said Lucy affixing her mark thereto, in the presence of two subscribing witnesses, one of whom was Belinda Jackson, matron of the Home for Aged and Infirm Colored Persons, and the other Mary W. Duncan, daughter of the said Andrew D. Cash. Elizabeth Cash, another daughter, was executrix. In his certificate of the probate of this will, the Register neglected to fill in the words "oaths" or "affirmations," but the jurat stated that the witnesses were duly sworn.

Elizabeth Cash, as executrix, made distribution of the estate, according to the terms of the will, and her account was confirmed by the Orphans' Court, July 7th, 1880. About a year afterwards, in June, 1881, Combs, who was half brother of the decedent and Hankinson, who was her half nephew,

[Combs' and Hankinson's Appeal.]

claiming as next of kin, filed the present petition, alleging that the decedent was insane at the time of making the last will, and accounting for their long delay, on the ground of sickness, poverty and want of knowledge of said will, and the proceedings thereunder.

Considerable testimony was introduced in regard to the alleged insanity of the testatrix, tending to show her forgetfulness; that she sometimes talked at random; sometimes lost her way when out walking; that in answer to questions put to her she said she had seen George Washington; that she had been in Noah's ark, and had visited his family, &c. Much evidence was presented on the other hand to prove the testatrix's sanity at and before the time of the execution of her will.

The Court, Penrose, J. delivering the opinion, dismissed the petition. Whereupon the contestants took this appeal, assigning for error the said action of the court.

*John D. Lewis,* for the appellants.—The probate of a will, by the clerk of the Orphan's Court, is a proceeding in rem, subject to be struck off by the court if illegally entered. McCorts' Appeal, 38 Leg. Int., 356; Chambers' Estate, 3 W. N. C., 188; Devlin v. Commonwealth, 40 Leg. Int., 252. A will bequeathing an estate to a charitable institution must be attested by two "credible" and "disinterested" witnesses. Act of April 26th, 1855; Taylor v. Mitchell, 57 Pa. St., 209. One of the subscribing witnesses was a salaried officer of the Home, and her payments depended on the gifts of the living or bequests of the dead, she was therefore interested. Each witness must separately depose to all facts necessary to complete execution, and when the testator cannot read or write, as in this case, the will must be read in the presence of the witnesses, etc.; attestation is the act of subscribing. Hock v. Hock, 6 S. & R., 47; Derr v. Greenawalt, 76 Pa. St., 239; Clark v. Morton, 5 Rawle, 235; Harding v. Harding, 18 Pa., 340. Here the witness, Belinda Jackson, subscribed as a witness at the sole request of Mrs. Duncan, and did not know at the time it was Lucy Taylor's will. Probate of a will must be made by oath or affirmation of two or more competent witnesses. Barney v. Sutton, 2 W., 31. Here the register's jurat does not show the witnesses to have been sworn to the necessary facts of such proof. The heir-at-law is entitled to an issue of fact as of right, if the evidence will sustain a verdict. Collins' Estate, 3 W. N. C., 434; Wainwright's Estate, 3 Id., 458. Partial insanity or delusions from which a will is the outgrowth, will support a verdict against the will. Drinkhouse's Estate, 38 Leg. Int., 214; Jones's Appeal, 39 Id., 52.

*William C. Hannis*, for appellees.—An employee of a bene-
ficiary is not such an interested witness as was intended by
the Act of 1855. A creditor was always a witness for his
debtor, even though the cause in which the creditor testified
would increase or diminish the solvency of his debtor. 1
Greenleaf Ev., § 389. But the question of interest has ceased
to be a factor even in construing the Act of 1858. The Act
of 1869 has practically removed the word "disinterested" from
said Act. Bowen *v.* Goranflo, 23 P. F. S., 357; Frew *v.* Clarke,
30 Id., 176. A verdict will not be granted, if upon the whole
evidence on both sides, a verdict against the will would not
be permitted to stand. Cozzens' Appeal, 11 P. F. S., 196; De
Haven's Appeal, 25 Id., 337; Schwilke's Appeal, 4 Out., 628.

Mr. Justice TRUNKEY delivered the opinion of the court,
October 6th, 1884.

The testatrix, unable to read or write, affixed her mark to
her will in the presence of two subscribing witnesses. Neither
of these witnesses at the time of publication had any interest
in the will, and both were credible. A credible witness is one
who is not disqualified to testify by mental incapacity, interest,
crime, or other cause. Even if it could be said that the Act
of April 26th, 1855, contemplates that the character of the
witnesses for truth must be good, the attesting witnesses to
this will stand unimpeached.

A corporation was the sole object of the bounty of the tes-
tatrix. Belinda Jackson was in the employ of that corpora-
tion, entitled to wages for her services, and it is contended by
the appellants that, therefore, she was interested. No effort
was made to sustain this contention by precedent. By all
authority a witness is not incompetent on the score of interest
unless he has a certain, not a possible benefit in the event of
the suit or in the matter in controversy; and an agent, servant
or employee is a competent witness for, as well as against, his
employer. Within the meaning of the statute a disinterested
witness is one who has no legal interest, and a credible witness
is one not disqualified to testify. Otherwise, the register or
probate court would be without chart or compass to aid in
determining the qualification of an attesting witness.

It is too plain for question that Mrs. Duncan had no interest
in the will in controversy at the time of its execution. While
living, Lucy Taylor could sell or give away her property, or
make a will which would revoke a prior one. A person named
as legatee in the prior will had no legal interest therein during
the life of the maker. Then, without considering whether
this will would have been valid if two of the witnesses had
not subscribed their names, it is clear that prima facie the

requisites of the statutes were complied with, and the will was properly admitted to probate.

In passing, it may be remarked that there is no evidence that the will was procured by fraud, duress, imposition, or undue influence. Nor is there anything in the relation which existed between the testatrix and Mrs. Duncan and Miss Cash to raise a legal presumption of undue influence over her mind. They are not recipients under the will. They had been her friends, she had entrusted them with the care of her property, they had sought to promote her comfort, and were named as legatees in her former will. Were that will unrevoked, a presumption might exist for them to overcome by evidence, if they could. But as to this, in absence of testimony that wrong was done, no wrong can be presumed.

It is hardly necessary to note the objection that the register's jurat does not show that the witnesses were sworn. The testimony subscribed by the witnesses sets forth the requisite facts without stating that they were sworn or affirmed, but the jurat shows that the witnesses appeared before the register and were sworn; that is sufficient.

Two witnesses are necessary to prove the execution of a will, each of whom must separately depose to all facts necessary to complete the chain of evidence, so that if only one witness were required the will would be fully proved by the testimony of either. Hock *v.* Hock, 6 S. & R., 47; Derr *v.* Greenawalt, 76 Pa. St., 239. In Pennsylvania a will may be lawfully executed by a man or an unmarried woman without witnesses being present, and it may be proved by two witnesses who are acquainted with the handwriting of the signature of the maker. Hence, if witnesses were present at the time of the execution, and saw the testator sign the will, and they subscribed it in his presence, it is unnecessary that they should have known the contents, or that the testator should have declared to them that it was his will. It is essential that the will of a married woman be executed in the presence of two witnesses, but the statute does not require that they subscribe. If it be that a bequest for a charitable use is void unless the witnesses subscribe the will, the statute does not require that the testator shall declare to the witnesses that the instrument is his will, or that he communicate to them its contents. Therefore, it is not essential in any case to the probate of a will, to prove more by the witnesses who were present at its execution, than the identity of the instrument, that they saw the testator subscribe or make his mark, and at the time of doing thereof he was of sound, disposing mind, memory and understanding. In Derr *v.* Greenawalt, supra, a blank was left for the name of the residuary legatee at the time the will

was executed; afterwards the name was inserted, not in the handwriting of the testator, and only one witness testified that the testator directed the insertion. The proof was positive that the blank existed when the will was published, and the requisite proof by two witnesses was wanting that it was subsequently filled by direction of the testator. Had the testator inserted the name in his own handwriting, proved by two witnesses, the case would have been different. And as remarked by Justice SHARSWOOD: " Had there been no subscribing witness, and the will been proved by the testimony of two witnesses to the handwriting of the testator, it would perhaps have been sufficient prima facie. The presumption may be that it was perfect when the testator subscribed to it."

The statute of New York makes it essential to the execution of a will that at the time the testator subscribes or acknowledges it, he shall declare it to be his last will and testament, in the presence at least of two attesting witnesses. Decisions under that statute, cited by appellants, showing that its provisions for the execution and proof of a will must be observed, have no bearing upon the construction of a statute that contains no such provision.

If the testator can neither write nor read it is not essential to the execution of the will that it be read to him in the presence of the subscribing witnesses: others may testify that he knew the contents. Where the will of a man who could not read was proved by the three subscribing witnesses, only one of whom testified that it was read to the testator, it was held sufficient. This court remarked that generally when a man does not draw his own will, the friend or scrivener whom he employs, is the only depositary of its contents, and that inquiry by a subscribing witness of the contents of a will would be considered a most impertinent and offensive curiosity. Wills differ from other instruments in that two witnesses are required to authenticate them. The execution of the will being proved by two witnesses, one is sufficient to rebut the imputation of fraud. The possibility of imposing on a testator a will of the contents of which he was ignorant, might exist in the case of a blind or illiterate man, but the charge that such act was done would be repelled by the testimony of one witness, if believed, that the will was truly read to him, as well as by the testimony of one hundred. Lewis *v.* Lewis, 6 S. & R., 489.

By the Act of March 27th, 1865, P. L., 38, where an executor has no interest in the subject matter in controversy, his right to compensation shall not be deemed an interest disqualifying him from being examined as any other witness. Whether or not under the Act of 1855, Miss Cash was a com-

petent witness to attest the will, she is competent under the Act of 1865 for other purposes. Though she is the executrix, she may testify that the will was drawn by the testatrix's direction, and was read to her before she affixed her mark. Two competent witnesses have proved that Lucy Taylor knew the contents of the will at the time it was executed, and it is immaterial whether they are subscribing witnesses.

The appellants contend that the testatrix was coerced to bequeath her property to the Home because, being an inmate, she was obliged to convey her property to the corporation, under its laws, of which the court will take judicial notice. On what principle the court can take judicial notice of the by-laws of a corporation, has not been shown. There is no testimony tending to show an attempt on the part of the corporation to obtain a conveyance or transfer from Lucy Taylor, and the uncontroverted evidence is that she went to the Home as a boarder, and that no rule of the institution required a transfer or a bequest of property by a boarder.

No just complaint can be made of the refusal of the court to compel Mrs. Duncan to answer the questions set out in the third specification of error. Those which were not manifestly impertinent had been substantially answered in response to other questions, and some repeatedly. Had the witness been heard in court, doubtless the cross-examination would have been very much shorter. A court would hardly have permitted so much repetition and latitude.

We are not convinced that the Orphans' Court erred in the consideration of the testimony or in refusing an issue. Many witnesses are now of opinion that Lucy Taylor was insane for a number of years before she went to the Home, but opinions are not evidence unless based on proper foundation. With the exception of Dr. Gardner, the witnesses were not experts or physicians, and they detail the facts within their knowledge. It is well said by the learned Judge of the Orphans' Court: " These opinions as to the incapacity of the testatrix found no expression while she lived, and the acts of the witnesses furnish most emphatic contradictions of them." None of the relatives or friends believed it necessary to have an inquisition to the end that a committee should be appointed to take care of her person or estate. On the day of her funeral the appellants were informed that she had willed her property to the Home, within a month thereafter they had procured a copy of the will, and not till eighteen months after receiving the copy did they begin this contest. The letter of George H. Combs, dated November 24th, 1879, sent to Lucy Taylor while she was living at the Home, does not indicate that he thought her imbecile or insane; nor does his letter to Mrs. Duncan, dated

[Mason *v*. Frick.]

March 19th, 1880.  Whatever was her mental condition before she went to the Home, it likely continued till near the time of her death.  She was aged, and possibly was seriously affected by her surroundings, even to the extent of giving her the appearance of insanity while she lived with Mr. Hankinson and with Mrs. Higgins.  After she left the house of Mr. Hankinson and before going to the house of Mrs. Higgins, she boarded a year with Mrs. Cooper, who testified that, "being old and feeble she was not allowed to go out alone," but not that she was insane or mentally imbecile.  While at the Home, until she had paralysis, the evidence is conclusive that she was sane.  The testimony of this fact, adduced by the appellees, is not overcome by any sufficient testimony to warrant other conclusion.  Upon the testimony of Rev. William S. Heaton, called by the appellants in rebuttal, she had testamentary capacity.  True, he is of opinion that she was insane, and incapable of making a will, and directly contradicts numerous statements of other witnesses, in answer to leading questions; but he is not an expert, and his conversations with her, which he details, show that she was sane, if not so cultured as himself.  He first knew her on July 18th, 1879, at the house of Mrs. Higgins, and afterwards visited her frequently at the Home, giving her instruction of a religious nature, and conversing with her mostly upon religious subjects.

We are of opinion that upon the whole testimony, if the cause should be tried by jury, a verdict against the will ought not to be permitted to stand.  The will was executed when the testatrix was living at the Home, at a time when there is not evidence to warrant a verdict that she was insane; and the second, third and fourth specifications of cause for an issue have no support in the evidence.

Decree affirmed, and appeal dismissed at the costs of the appellants.