# Kessler's Estate.

*Wills—Witness—Subscribing witness—Charitable bequest—Credible and disinterested witness—Act of April* 26, 1855, *sec.* 11, *P. L.* 328.

Where a subscribing witness to a will containing a charitable bequest knows that he is signing a testamentary paper, and is asked by the testator, or by the other witness in testator's presence to sign as a witness, it is not necessary that he should hear it read or know its contents; nor is it indispensable that the witness shall see the testator sign the will. The testator may after the will has been prepared, affix his name thereto, and subsequently acknowledge his signature in the presence of a subscribing witness. Such a witness is a credible witness within the meaning of sec. 11 of the Act of April 26, 1855, P. L. 328.

A subscribing witness to a will containing charitable bequests went into the office where the testator was seated at a desk with the will already signed by him in his hand. The name of the testator was in plain view of the witness, who was requested to sign his name below that of the other subscribing witness, which he did, after having been told by the other witness outside of the office that the testator desired him to be a witness to his will. *Held,* that the subscribing witness was a credible witness within the meaning of the act.

While charitable gifts may be said to be favorites of the law, yet the law discourages such gifts at or near the time of impending death, when the mental faculties are impaired, the will power broken, and the vital forces weakened, because, under such circumstances the importunities of designing persons, or the terrors of final dissolution may induce dispositions of property contrary to natural justice, and without regard to the ties of kinship, which under normal conditions would be operative on the mind of the testator.

An executor may be an attesting witness to a will making bequests to religious and charitable uses, provided he is in no way benefited by the will, except in the matter of his commissions.

The words "disinterested witnesses" used in the act of April 26, 1855, must be read and understood in connection with the subject-matter of the statute, the evils to be avoided, the requirements intended to safeguard the rights and property of persons approaching death and the remedy to be provided in such cases. When so read and understood, the interest which disqualifies a witness under the act is such an interest as appears to exist at the time of the execution of the will, either by the terms of the will itself, or by reason of the attesting witness being then interested in the religious or charitable institutions for which provision is made by the testator, or both, or either, as the case may be.

If the attesting witness be interested as legatee or devisee under the will, or is to derive a pecuniary benefit, or advantage, from any part of it, or if he is interested at the time of attestation in a religious or charitable institution to be benefited thereby he is not disinterested within the meaning of the statute.

One of the subscribing witnesses to a will containing charitable gifts was an executor and trustee under the will. He was also a trustee and officer in a church to which part of the income and ultimately a portion of the corpus of the trust estate was directed to go; and had an option to purchase certain shares of stock which were a part of the trust for religious and charitable uses, at a price to be agreed upon by three disinterested persons to be selected in a particular manner; he was one of two trustees to whom the stock of a corporation was given in trust to vote at corporate elections, and whose duties required that dividends received be paid by them to the charities named and in the proportions fixed in the will; he was also a stockholder and director in the corporation, as well as an officer and employee. *Held*, that the witness was not a disinterested witness within the meaning of the act of April 26, 1855.

Argued March 31, 1908.  Appeal, No. 100, Jan. T., 1908, by Henry K. Stewart et al., from decree of O. C. Phila. Co., April T., 1907, No. 397, dismissing exceptions to adjudication in Estate of George Kessler, deceased.  Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Exceptions to adjudication of ANDERSON, J.

The portion of the adjudication relating to the subscribing witnesses and the validity of the charitable gifts was as follows:

Objection was made at the audit that while the will had subscribing witnesses and was executed more than thirty days before the death of the testator, it was void, as it was not attested by two credible, disinterested witnesses.  It was shown by the testimony that the will was drawn by the testator, who took some time to complete it, but after the will had been written and signed it was shown by the testator, who directed Kendig to take it out of his safe for that purpose, to Willis G. Kendig, who was made by it one of the executors and trustees under it, as well as counsel for the executors, and that at that time the testator wrote the codicil and executed it.  The witness, Kendig, also testified that he warned the testator against having Wilmerton, who was also an exec-

utor and trustee, as well as trustee for one of the charitable legatees, witness it. Subsequently, Mr. Wilmerton signed the will as a witness at the request of the testator, and Wilmerton also, at his request, went outside of their office, they having one together, and requested Mr. Fuigle to come inside to sign the will, stating to him that Mr. Kessler had finished it. Mr. Fuigle came into the office, and at the request of the testator signed his name as a witness below that of Mr. Wilmerton, and opposite that of the testator. He further testified that he was not told by the testator that it was his will.

We have then these facts: First, that the will was signed by two subscribing witnesses, one of whom was not told that it was a will; second, that it was shown to three witnesses, two of whom knew from the testator that it was his will, and both of whom were trustees under it, one being also a trustee for a charity, a legatee under the will. The law requires that there shall be two disinterested witnesses, who shall attest the will one calendar month before the death of the testator. It was argued with great force that Kendig and Wilmerton, being trustees under the will, and having certain rights thereunder, and the act speaking of deeds as well as wills, and as in a deed the parties thereto could not be witnesses, these gentlemen could not be witnesses to the will. However this might be in a deed, which is an agreement between the parties, it does not apply in the case of a will. In a deed it might very truly be said that neither of the parties can be a witness to it; but a will is not an agreement between the parties, being the act of one alone, and certainly, irrespective of any other person, he has a right to call anyone whom he pleases to be his witness.

It was also argued that the word "attest" in the act was synonymous with the word "subscribe;" that attesting witnesses spoken of there meant subscribing witnesses, and the auditing judge is free to confess that if the question were new, the argument would have great weight with him. But it has not been so held by the Supreme Court, and is, therefore, not the true interpretation: Irvine's Estate, 206 Pa. 1.

Nor is the objection that Fuigle was not told by the testator that the document which he was signing was his will, good. The fact that he did so sign it at the request of the testator as

a witness to his signature which was affixed makes him a witness, the courts holding that a man may have a document witnessed without being bound to disclose its contents: Beswick's Estate, 13 Pa. Dist. Rep. 711; Combs' and Hankinson's Appeal, 105 Pa. 155. The attesting clause, moreover, shows that it is his will he has witnessed. He is, therefore, one of the necessary witnesses, being admittedly disinterested, as required by law.

We next have Kendig, to whom the testator showed the will signed, and in whose presence he drew the codicil. He was not a subscribing witness, but clearly, under all the decisions, is an attesting one, for, if the matter of subscription be left out, how could one be made more of a witness than by being shown the signed will, and it being discussed with him by the testator?

The third witness, Wilmerton, saw the will, discussed it with the testator and subscribed to it. Having, therefore, one witness undoubtedly competent, we have then to take up the question—are the others rendered incompetent by reason of interest? As to Kendig. He is, first, an executor under the will; second, a trustee under the will for the charities; third, he has a power of voting a part of the stock of the wheel works, with the further right to purchase some at a price to be fixed by appraisers, and, fourth, he is the attorney for the estate.

As to Wilmerton, he is, first, executor under the will; second, a trustee under the will for the charities; third, he has a power of voting a part of the stock of the wheel works, with the privilege to purchase some at a price to be fixed by appraisers, and, fourth, he is a trustee of the Kensington Methodist Episcopal church, one of the legatees.

The question as to their being interested by virtue of the position of executor can be dismissed at once, for that such an office does not disqualify is decided in the case of Jordan's Estate, 161 Pa. 393, and the reasoning in that case will apply with equal force to the objection that they are trustees under the will. The fact that they may ultimately get some advantage is not such an interest as will disqualify.

The fact of their having, in addition to the ordinary compensation of trustees, the power to vote the stock, and also the power to take it at an appraised value, is, in the mind of

the auditing judge, no reason why they can be called interested as regards these legacies and devises. One who is interested in a will and not in the charities cannot, in the view of the auditing judge, be held to be an interested witness, their interests being a personal one and not connected with the legacies to the parties. A devisee under a will can be a competent witness to it: Patterson v. Shrader, 12 W. N. C. 429.

The witness, Kendig, being, therefore, only interested as an officer or employee to carry out the terms of the will, is not such an interested witness as will disqualify him. Wilmerton, however, stands in a somewhat different light from Kendig in that he is not only a trustee under the will, but also a trustee or officer of the charities. Now, the act prohibiting proof of such a will by those whose interest it was to have such a gift made, it seems to the auditing judge, on principle, that he in whose custody the funds of the church are to be placed comes squarely under the prohibition of the act. A gift to charity is not to an individual, but to a corporation or a number of people. The evil the act sought to eradicate was the proof of wills by those representing such corporations or bodies, or acting for them in their dealings as to testators or settlors. If we allow those who act for the charities in administering their funds, who, if anybody, were interested in their accumulation, to act as witnesses to a will, the word " disinterested " has no meaning. An employee may have no interest, because he is not one who acts for the parties. A board or a church council has been decided to have no interest; but it would seem that those who gather its assets conserve and expend them, and upon whom the financial existence of the church depends, are such persons who, under the terms of the act, are interested. But the auditing judge is bound by the decisions, which, upon this point it seems to him, are clear, that the interest to disqualify must be a pecuniary one. There is no testimony here that this witness was to get any pecuniary benefit from his connection with the church, and that is what has been held to be the only interest which disqualifies: Evans' Estate, 12 Pa. Dist. Rep. 694; Combs' and Hankinson's Appeal, 105 Pa. 155; Jordan's Estate, 161 Pa. 393; Davies v. Morris, 17 Pa. 205; Shortz v. Unangst, 3 W. & S. 45.

None of the witnesses being, in the opinion of the auditing judge, interested witnesses, such as are contemplated by the act, the objection is overruled, and the gifts to the charities are held valid.

The court in an opinion by LAMORELLE, J., dismissed the exceptions.

*Error assigned* was in dismissing the exceptions.

*James Gay Gordon*, with him *Charles H. Hassert* and *Sandberg & Heymann*, for appellants.

*John G. Johnson*, with him *W. H. G. Gould*, *William R. Murphy* and *Samuel H. Kirkpatrick*, for appellees.

OPINION BY MR. JUSTICE ELKIN, May 11, 1908:

The question to be determined on this appeal is whether certain bequests to charitable and religious uses contained in the last will and testament of the decedent are valid under section 11 of the Act of April 26, 1855, P. L. 328. The will was prepared and executed more than one calendar month before the decease of the testator, and the only point pressed in the court below and raised here is that it was not attested by two credible, and at the time, disinterested witnesses as required by the act. There are two subscribing witnesses to the will, and if they are disinterested, the bequest to charitable and religious uses must stand, if not they must fall. The whole case turns on the point what constitutes such an interest as will disqualify an attesting witness. It was held in a recent case that the attesting witnesses required by the act of 1855 must be subscribing witnesses: Paxson's Estate, ante, p. 98. It was decided in Morgan's Estate, 219 Pa. 355, that where a subscribing witness knows that he is signing a testamentary paper, sees the testator sign it, and is asked by the testator or by the other witness in testator's presence to sign as a witness, it is not necessary that he should hear it read or know its contents. Under the rule of Paxson's Estate, supra, the only witnesses to be considered in the present case are Wilmerton and Fuigle, who attested the will by subscribing their names as witnesses to its execution. As to the sub-

scribing witness Fuigle, the contention that he is not an attesting witness within the meaning of the act because he did not see the testator sign his name to the will and was not made familiar with its contents cannot prevail under the authority of Morgan's Estate above cited. To the same effect is Combs' and Hankinson's Appeal, 105 Pa. 155, wherein Mr. Justice TRUNKEY, who delivered the opinion of the court, said : " Hence if witnesses were present at that time of the execution and saw the testator sign the will, and they subscribed it in his presence, it is unnecessary that they should have known the contents or that the testator should have declared to them that it was his will." It is not indispensable that the witness should see the testator sign the will. The testator may, after the will has been prepared, affix his name thereto and subsequently acknowledge his signature in the presence of a subscribing witness : Irvine's Estate, 206 Pa. 1. This is what was done with the witness Fuigle, who went into the office where the testator was seated at a desk, with the will already signed by him in his hand, the name of the testator being in the plain view of the witness who was requested to sign his name below that of the other subscribing witness, which he did, after having been told by the other witness out in the shop that the testator desired him to be a witness to his will. It was not necessary that he should have affirmative knowledge of the contents of the will, or of the devises, or bequests, or of the testamentary disposition made of the property by the testator in order to qualify him to act as a witness to its execution. We, therefore, hold that Fuigle was a credible and at the time of the execution of the will, a disinterested witness.

The act of 1855 is a remedial statute, and should be construed so as to give effect to the purpose for which it was enacted. While charities may be said to be favorites of the law, and when in times like the present vast wealth is accumulated in the hands of individuals, it is not only desirable, but highly commendable, for persons possessed of large estates to set apart portions thereof for religious and charitable uses, yet the law discourages such gifts at or near the time of impending death, when the mental faculties are impaired, the will power broken and the vital forces weakened,

because, under such circumstances, the importunities of designing persons or the terrors of final dissolution, may induce dispositions of property contrary to natural justice, and without regard to the ties of kinship, which, under normal conditions, would be operative on the mind of the testator. A man may do what he will with his own. He may give all he has to his relatives and friends, or he may give it to religious and charitable uses if he so desires, but when he leaves the channels through which natural benefactions flow to extend aid to those objects or institutions intended to improve the morals and better the conditions of the general public, the law says to him such intention must be manifested by a deed or will, executed at such a time and in such a manner as to make it reasonably certain that the thing done was the free will act of the donor, and was not the result of undue solicitation on the part of interested persons. Hence the requirement that the deed or will be attested by two credible, and at the time disinterested witnesses. With the policy of the law involved in this legislation we have nothing to do, but as to the act itself, clearly within the power of the legislature to pass, it is the duty of the court to enforce its requirements so as to effectuate the purpose for which it was enacted. It must, therefore, be determined whether Wilmerton, who attested the will as a subscribing witness, had such an interest as to disqualify him within the meaning of the act. He was one of the executors of the will ; he was a trustee and officer in a church to which part of the income and ultimately a portion of the corpus of the trust estate was directed to go ; he had an option to purchase certain shares of stock which were a part of the trust for religious and charitable uses, at a price to be agreed upon by three disinterested persons, to be selected in a particular manner ; he was one of two trustees to whom the stock of the Kessler Wagon Works Company was given in trust to vote at corporate elections, and whose duties required that dividends received be paid by them to the charities named and in the proportions fixed in the will ; he was also a stockholder and director in the wagon company, as well as an officer and employee, and had whatever benefit accrued to him as a stockholder and officer in that company by reason of having the power to vote the stock so held in trust by him ; he was also entitled to his commissions not only as

executor but as trustee. Did these things create such an interest as to disqualify him as a witness to the will? It must be conceded that there is some confusion growing out of our own cases on the subject, and it must be accepted as finally settled that the nomination by a testator of a person to act as an executor does not in itself constitute such an interest as to disqualify the person so nominated to act as a witness. This is the doctrine of Snyder v. Bull, 17 Pa. 54; Combs' and Hankinson's Appeal, 105 Pa. 155, and Jordan's Estate, 161 Pa. 393. We recognize these cases as authority for the exact question decided therein, that is to say, an executor may be an attesting witness to a will making bequests to religious and charitable uses. Snyder v. Bull, decided in 1851, had no reference to the act of 1855. The matter for consideration in that case was the proper proof of a will under the act of 1833, and all that was said by Mr. Justice GIBSON had reference to the law as it then stood. The test applied was the qualification of witnesses generally in legal proceedings, but this test can scarcely be held to apply to the act of 1855, which had not been passed at that time, and which was intended to accomplish a very different purpose. It is true that in Combs' and Hankinson's Appeal and in Jordan's Estate the line of reasoning suggested in Snyder v. Bull was followed by the learned justices who wrote the opinions in the later cases. The rule of these cases is predicated on the theory that an interest such as would disqualify must be present, certain and vested, and not uncertain, remote or contingent. In other words, it must be what has been called a substantial or legal interest. With such a definition of interest it naturally followed that an executor, though nominated in the will, did not have a present or vested interest because he might die before the testator, or his nomination as executor, or the will itself, might be revoked. While we consider the rule of these cases to have overlooked the spirit and purpose of the act of 1855, it is authority for what was therein decided, and will be so regarded, but the doctrine will not be further extended. We agree with the suggestion of the learned judge of the court below, who delivered the opinion on the exceptions to the adjudication in the present case, in reference to the logical result of the application of this doctrine, wherein it is said : " Carried to its

logical extreme such interpretation practically nullifies the purpose of the act, at least so far as a will is concerned, for as the testator may at any time revoke a will, and as, therefore, none of its provisions may ever become effective, every witness can necessarily have no interest pecuniary or otherwise at the time of signing; and as a deed is witnessed before delivery and becomes effective only on delivery, by a parity of reasoning all witnesses to deeds are at the time disinterested." We think the test of qualification for witnesses in judicial proceedings generally, as given by Greenleaf and other text-writers, and followed by some decisions of our courts, does not, and should not, control in arriving at a proper interpretation of the act of 1855. The words, "disinterested witnesses," used in this act, must be read and understood in connection with the subject-matter of the statute, the evils to be avoided, the requirements intended to safeguard the rights and property of persons approaching death, and the remedy to be provided in such cases. When so read and understood, the interest which disqualifies a witness under the act is such an interest as appears to exist at the time of the execution of the will, either by the terms of the will itself or by reason of the attesting witness being then interested in the religious or charitable institutions for which provision is made by the testator, or both, or either, as the case may be. Again, from what has been hereinbefore stated and by reason of the specific requirements of the act, it seems clear that an interest in any part of the will is such as will disqualify a witness for the purpose of attestation. The act requires the execution of the deed or will to be attested by two disinterested witnesses. It will be observed that the attestation of the execution of the whole instrument is what is required by the statute. The purpose of the act was to place the settlor, or the testator, at the time of the execution of the instrument, in the presence of two disinterested witnesses, so that he would be entirely free from the importunities and solicitations of interested persons. If the attesting witness be interested as legatee or devisee under the will, or is to derive a pecuniary benefit or advantage from any part of it, or if he is interested at the time of attestation in a religious or charitable institution to be benefited thereby, he is not disinterested within the meaning of the statute. Under

this view of the law, Wilmerton was disqualified to act as an attesting witness, and the bequests to religious and charitable uses must be held invalid.

Decree reversed and record remitted to the court below, in order that distribution may be made in accordance with this opinion.