## Stinson's Estate (No. 1).

*Wills—Construction—Precatory words—Charities.*

1. When precatory words are used in a will merely for the purpose
of advising or influencing, or as expressive of a wish or desire that the
legatee or devisee make a certain use of the testator's bounty, they are
not obligatory upon those to whom they are addressed; but when used
to express his manifest intention to control or direct, they are manda-
tory, and will be so construed in saying what effect is to be given to
them.

2. Where a testatrix in her will provides: "I give and bequeath"
certain property "to start and use for a Woman's Christian Associa-
tion. . . . I hereby appoint or wish the Institution to be carried out
upon the plan of the Woman's Christian Association of Philadel-
phia. . . . I would like the Executive Committee to consist of the
following ladies," naming them, the words used to designate who should
form the executive committee of the charity, though precatory in form,
express the will and intention of the testatrix as to the composition of
the committee, and are, therefore, to be regarded as mandatory.

*Wills—Probate—Charities—Charity created by testator—Disinterested
witness—Act of April 26, 1855; P. L. 328—Evidence.*

3. The disqualifying interest of a witness to the execution of a deed
or will, within the meaning of the Act of April 26, 1855, P. L. 328, is an
interest in an existing charity for which a grant is made by a deed or a
bequest or devise is given by a will, or it is one in a charity created by
the grantor or testator, but the rule as to disqualification is the same in
each case.

4. A will establishing a charity is not attested by two disinterested witnesses, as required by the Act of April 26, 1855, P. L. 328, where one of the two attesting witnesses is named in the will as a member of the first executive committee of the charity and it appears from the other provisions of the will that the duties of this committee were to be of a most comprehensive, important and material character in the maintenance, direction, management and government of the proposed charity.

Mr. Justice STEWART dissents.

Argued Jan. 31, 1911. Appeal, No. 356, Jan. T., 1910, by Isabella B. Sower et al., on behalf of the Women's Christian Association, from decree of O. C. Montgomery Co., Sept. stated court, 1910, No. 48, awarding distribution in Estate of Agnes J. Stinson, deceased. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. Before BLAND, P. J., specially presiding.

The facts appear in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication and in holding a gift to the Women's Christian Association void.

*Montgomery Evans*, of *Evans & Dettra*, with him *Wanger & Knipe* and *N. H. Larzelere*, for appellants.—Mrs. Ralston did not have an interest at the execution of the will nor did she then acquire an interest: Kessler's Estate, 221 Pa. 314.

*James Gay Gordon*, with him *J. Morris Yeakle*, for appellees.—A subscribing witness is interested in a will where he is given a legacy or devise by it. He is interested in a charitable or religious use where his relationship to it is or may be so intimate that he would or might be anxious that it should be the object of the testator's bounty: Kessler's Estate, 221 Pa. 314; Hupfeld's Estate, 5 Phila. 219.

The fact that the appointment of the members of the

executive committee was made in precatory words is immaterial and irrelevant to the issue involved: Burt v. Herron, 66 Pa. 400; Coates' Appeal, 2 Pa. 129.

OPINION BY MR. JUSTICE BROWN, July 6, 1911:

By a will in her own handwriting, and signed by her more than one calendar month before her death, the testatrix devoted nearly all of her estate to the establishment of a charity, but, under the decree of the court below, her intention cannot be given effect, and her next of kin will take what she wished to go elsewhere, because of her failure to have her will attested by two disinterested witnesses, as required by the Act of April 26, 1855, P. L. 328. That portion of her will by which she intended to found a charity is as follows: "I give and bequeath my property at the corner of Airy and Church Streets in the Borough of Norristown to start and use for a Women's Christian Association. I, give and bequeath my furniture, organ, carpets, piano, bedding, linen, silverware, sewing machines to be used with care in the Women's Christian Association. I, give and bequeath the residue of my estate to the Women's Christian Association and the interest thereon arising for an endowment fund for said institution. Hereby revoking all former wills. I, hereby appoint or wish the institution to be carried out upon the plan of the Women's Christian Association of Philadelphia, 18th and Arch Sts. with the exception that this institution is for Protestants only. I would like the Executive Committee to consist of the following ladies, Mrs. F. D. Sower, Mrs. Robert N. Wood, 531 Cherry St., Mrs. John K. Ralston, Mrs. H. M. Bunting, Mrs. Ella R. Wright, all of the Borough of Norristown, Executive Committee being empowered to select other ladies, who are willing to work faithfully for the Institution."

The two attesting witnesses to the execution of the will were John K. Ralston and his wife, Anna M. F. Ralston, called by the testatrix "Mrs. John K. Ralston" when she named those whom she wished to compose the execu-

tive committee of the Women's Christian Association, and from the finding of the court below that Mrs. Ralston was not a disinterested witness at the time she attested the execution of the will there followed a decree of distribution from which we have this appeal.

Though the testatrix used words precatory in form in saying who should compose the executive committee of the charity which she intended to establish, she used them to express her will and intention as to the composition of that committee, and they are, therefore, to be regarded as mandatory. The rule as to this is that, when precatory words are used merely for the purpose of advising or influencing, or as expressive of a wish or desire that the legatee or devisees make a certain use of the testator's bounty, they are not obligatory upon those to whom they are addressed; but when used to express his manifest intention to control or direct, they are mandatory, and will be so construed in saying what effect is to be given to them: Pennock's Estate, 8 Harris, 268; Burt v. Herron, 66 Pa. 400; Presbyterian Board of Foreign Missions v. Culp, 151 Pa. 467; Dickinson's Estate, 209 Pa. 59; Colton v. Colton, 127 U. S. 300; Warner v. Bates, 98 Mass. 274; Phillips v. Phillips et al., 112 N. Y. 197; 1 Jarman on Wills, 680. "All the cases upon a subject like this," said Lord Chancellor Cottenham in Shaw v. Lawless, 5 Cl. & Finn. 129, 153, "must proceed on a consideration of what was the intention of the testator." In Williams v. Williams, 1 Simons (N. S.), 358, 369, Vice Chancellor Cranworth said: "The point really to be decided in all these cases is whether, looking at the whole context of the will, the testator has meant to impose an obligation on his legatee to carry his express wishes into effect, or whether, having expressed his wishes, he has meant to leave it to the legatee to act on them or not at his discretion. I doubt if there can exist any formula for bringing to a direct test the question whether words of request, or hope, or recommendation are or are not to be construed as obligatory."

The Women's Christian Association of Norristown was to be the sole creation of the testatrix, and when she said "I, hereby appoint or wish the Institution to be carried out upon the plan of the Women's Christian Association of Philadelphia," she meant that she ordained and directed that the institution should be carried out upon that plan. That the words she thus used are to be regarded as mandatory cannot be questioned. Remembering, however, that the executive committee of that association was to be composed of its officers, together with the chairmen of the standing committees, and being unwilling that the executive committee of her charity should be so made up, she proceeded, in immediate connection with her concededly mandatory words, to say: "I would like the Executive Committee to Consist of the following ladies," whom she named. This was but a continuance of her expressed intention as to how her intended charity was to be "carried out," and to that intention effect must be given under all the authorities. The word "like," as the court below properly held, expressed the intention of the testatrix, and, though precatory in form, it none the less declared the state of her mind and showed that one of the essential elements of the scheme which she prescribed for her proposed charity was an executive committee to consist in part of Mrs. Ralston. The sole question before us on this appeal is as to the interest of Mrs. Ralston at the time she attested the execution of the will.

The expressed intention of the testatrix, that Mrs. Ralston should be one of the executive committee of the Women's Christian Association, would be given effect if the charity which she intended to establish had been created and endowed in accordance with the requirements of the act of 1855. If her will had been attested by two disinterested witnesses, the charity would have come into existence upon her death, and, under her expressed intention that it should be conducted upon the plan of the Women's Christian Association of Philadelphia, at Eighteenth and Arch Streets, the general plan of that association

would be its general plan; but its first executive committee would consist of the persons whom she named. The Women's Christian Association of Philadelphia was established for the temporal, moral and religious welfare of women, especially young women, who are dependent upon their own exertions for support. The general management of this association is controlled by a board of managers, with large general powers, among which are those specially given by the ninth by-law. It is as follows: "The board of managers shall have full power and authority to enter into any contract or agreement that they may deem best for the interests of the association, for the lease or purchase of any real estate or property needful or necessary for the use or enjoyment of the said association. The said board of managers shall also have full power and authority to sell, mortgage, or lease any real estate or property held by or belonging to said association, and to extinguish any ground rent or rents issuing thereout or owned by said association. They shall also have full power and authority to authorize the due execution and delivery of any and all such deed, deeds, conveyances, mortgages, agreements, contracts or other assurances in the law needful and necessary to effectuate the same." By the seventh by-law it is made the duty of the executive committee "to act for the board, and suggest such measures as they may deem expedient," their proceedings being subject to the approval of the board. It is to be presumed that the testatrix had these provisions in her mind when she wrote and signed her will. She directed that the general plan of this association should be the model upon which her charity was to be conducted, except as to the composition of its first executive committee. The functions of that committee, however, in the absence of any direction by the testatrix to the contrary, were to be those of the executive committee of the Women's Christian Association of Philadelphia, and, in view of the provisions of the by-laws of that institution, the court below properly found: "The functions, powers and duties of the 'Execu-

tive Committee' mentioned in the will of Agnes J. Stinson of which committee she appointed said Anna M. F. Ralston a member, are of a most comprehensive, important and material character, in the maintenance, direction, management and government of the charity which said Agnes J. Stinson intended to establish under the name of the 'Women's Christian Association.'"

The disqualifying interest of a witness to the execution of a deed or will, within the meaning of the act of 1855, is an interest in an existing charity for which a grant is made by a deed or a bequest or devise is given by a will, or it is one in a charity created by the grantor or testator, but the rule as to disqualification is the same in each case. In testing the qualification of witnesses to the execution of a deed or will by which a charity is created the situation is just the same as if the charity was in existence and the grantor or testator would make additional provision for it. Many charities are originally established by testators just as this testatrix wished to establish one, and the purpose of the act of 1855 is to exclude from witnesses qualified to attest the execution of such a will anyone who may by its terms be interested in the intended charity. "The interest which disqualifies a witness under the act is such an interest as appears to exist at the time of the execution of the will, either by the terms of the will itself or by reason of the attesting witness being then interested in the religious or charitable institutions for which provision is made by the testator, or both, or either, as the case may be:" Kessler's Estate, 221 Pa. 314. The disqualifying interest of Mrs. Ralston as a witness appears from the will itself, and to say that it is an uncertain, remote or contingent one, not within the contemplation of the act of 1855, because the charity was to come into existence only upon the death of the testatrix, provided she had not revoked her will, and provided further that Mrs. Ralston would, if she had lived, have consented to act as a member of the executive committee, would be to strike down the act in every case in which one of the attesting witnesses to

a will is, by its terms, made interested in a charity created by it. The act is intended as much for such a case as if the bequest or devise is to a charity in existence at the time of the execution of the will in which the testator would make it the object, or one of the objects, of his bounty.

The learned judge below aptly says of the appointment of Mrs. Ralston by the testatrix as a member of the executive committee of the association which she would have established, that by such appointment she built Mrs. Ralston into the very structure of the official organization of the proposed charity, and, for the purpose of passing upon the question of her interest as a witness to the will, she is inseparable from it. Proceeding, he further says: "The testatrix has made the 'Executive Committee' the very nucleus of the organization of the proposed institution; and of that nucleus the challenged witness is a component part. It is quite evident that the testatrix appointed the 'Executive Committee,' with the expectation, that they, as persons directly interested, would organize the charity; and that the finished product should be the fruit of their deliberations. If that was not her expectation, why did she stop there? What interest, then, could be more vital than that of the members of the 'Executive Committee,' at this point; to say nothing of the functions, powers and duties vested in and imposed upon them, by the seventh section of the by-laws of the Philadelphia institution, adopted as a model by the testatrix."

The foregoing correctly states the situation, and, under Kessler's Estate, supra, and Fetterhoff's Estate, 228 Pa. 535, the conclusion reached by the learned court below, that the decedent's proposed charity must fail, could not be avoided.

Appeal dismissed and decree affirmed, at the costs of the appellants.

MR. JUSTICE STEWART, dissenting:

As I view it, this decision not only contravenes a settled rule of construction which, since Pennock's Estate,

20 Pa. 268, has been uniformly applied, but it extends the disqualification of witnesses to a testamentary act to cases not falling within the mischief which the statute of April 26, 1855, was intended to prevent. Pennock's Estate was a case most carefully considered, and the deliverance there was the final expression of the court with respect to a question which theretofore had been much discussed, but until then never settled. The uncertainty in which it had been left required the adoption of a fixed rule of construction, and this was expressed in one of the conclusions reached by the court in that case. It is as follows: "Words in a will expressive of desire, recommendation, and confidence are not words of technical, but of common parlance, and are not, prima facie, sufficient to convert a devise or bequest into a trust; and the old Roman and English rule on this subject is not part of the common law of Pennsylvania." The rationale of the rule is that an absolute estate having been given, it may not be derogated from by mere precatory words. It would burden this dissent if I were to cite all the cases in which the rule has been followed. One or two will suffice. In Burt v. Herron, 66 Pa. 400, Mr. Justice SHARSWOOD says: "It is undoubtedly true that where a testator makes an absolute devise or bequest, mere precatory words of desire or recommendation annexed will not in general convert the devisee or legatee into a trustee, unless indeed it appear affirmatively that they were intended to be imperative. The authorities, which are somewhat discordant, were fully examined in Pennock's Estate, 20 Pa. 268, and the rule of construction settled upon what seems to be the most reasonable foundation." What subsequently occurs in the opinion and is supposed to qualify that which precedes, in no sense qualifies, but reaffirms. The reference in the opinion is to precatory words which stand alone, and are the only direct disposition of the estate, as will be seen from the following quotation: "Should a testator say merely, 'I desire A. B. to have a thousand dollars,' it would be as effectual a legacy as if he was expressly to direct or

will it, or were to add, 'out of my estate,' or that it should be paid by his executor. The reason is obvious. A will, in its very nature, is the disposition which the testator desires to have made of his estate after his death. All the expressions in it indicative of his wish or will are commands. It is different when, having made a disposition, he expresses a desire that the legatee or devisee should make a certain use of his bounty." The case was cited and relied upon in Hopkins v. Glunt, 111 Pa. 287, where Chief Justice MERCUR uses this language: "In this state the rule is well settled that words in a will merely expressive of desire, recommendation, and confidence, are not sufficient to convert a devise or bequest into a trust: Pennock's Estate, 20 Pa. 268; Jauretche v. Proctor, 48 Pa. 466; Second Reformed Presbyterian Church v. Disbrow, 52 Pa. 219; Bowlby v. Thunder, 105 Pa. 173. Expression of a desire or a wish of the testator as to a specific disposition of his property, standing by themselves alone, may constitute a valid devise or bequest thereof. The rule is different when such expressions are used after an absolute disposition of the property has been made. After an unqualified devise by the testator of his property, no precatory words to his devisee can defeat the estate previously granted: Burt v. Herron, 16 P. F. S. 400." If there is a case in Pennsylvania since Pennock's Estate in which this rule has ever been questioned, much less departed from, my attention has not been directed to it. In the present case the devise was of an absolute estate to the Women's Christian Association, as was also the bequest. Immediately following, the testatrix employs apt words of direct disposition. She not only wishes, but she "appoints" that the institution she proposes to have established, "shall be carried out upon the plan of the Women's Christian Association of Philadelphia, Eighteenth and Arch Streets, with the exception that the institution is for Protestants only." This was a direct and positive definition of the charity, and a substantive part of the gift itself. It will be observed that she does not attempt to appoint

an executive committee, but having disposed of her estate absolutely to the institution which she creates and endows, she simply expresses a preference that certain individuals named shall compose that committee. Her language is, "I would like the Executive Committee to consist of the following ladies," naming them, and including one who became a witness to the execution of the will, and who is now adjudged to have been disqualified. The distinction between the two clauses of the will is too obvious to be overlooked. The difference of expression is convincing to me that the distinction must have been in the mind of the testatrix. Any other interpretation leaves unexplained the use of the word "appoint" in the one and the omission of it in the other. The earlier one was a positive direction accompanying the gift; the later was simply the expression of a preference, the gift in no wise depending upon its observance. I would adhere to the rule in Pennock's Estate, which as Mr. Justice SHARSWOOD says in Burt v. Herron, supra, "is settled on what seems to be a most reasonable foundation."

But more than this, the decision here disqualifies where there can be no reason for the disqualification. Not only was it not shown that Mrs. Ralston was a member of any Women's Christian Association, but this particular association which testatrix was providing for had no existence when the will was made; and whether Mrs. Ralston was ever to become identified with it, when created, rested, other conditions being favorable, on her own pleasure. Upon the death of the testatrix, what possible interest in the estate could Mrs. Ralston have asserted, and in what tribunal could she have been heard? In Kessler's Estate, 221 Pa. 314, we advanced beyond anything we had ever decided with respect to disqualification arising under the act of 1855. This decision marks a still further advance, and Kessler's Estate therefore furnishes no warrant for it. In that case it is said: "The words 'disinterested witnesses,' used in this act, must be read and understood in connection with the subject-matter of the statute, the

evils to be avoided, the requirements intended to safe-
guard the rights and property of persons approaching
death, and the remedy to be provided in such cases. When
so read and understood, the interest which disqualifies a
witness under the act is such an interest as appears to
exist at the time of the execution of the will, either by the
terms of the will itself, or by reason of the attesting wit-
ness being then interested in the religious or charitable
institutions for which provision is made by the testator,
or both, or either, as the case may be." At the time of the
attestation of this will Mrs. Ralston was not interested
"by the terms of the will." The will gave her nothing;
nor was she interested in the charity that the will provided
for. The will did not make her a member of the executive
committee of the institution to be erected. Whether she
was ever to become a member depended first of all upon
the action of the proper authorities, and quite as much
upon her own pleasure. Both would have to concur. Her
membership at most was a mere possibility. If we are to
place a construction on the act of 1855 that will disqualify
an attesting witness because some time in the future he
or she may become a manager or other officer of the char-
itable institution to be founded, the enforcement of the
act in accordance with such construction becomes abso-
lutely impracticable. Under the doctrine in Kessler's
Estate, the interest that disqualifies must be a then present
interest at the time of the attestation. In that case the
attesting witness who was adjudged disqualified was a
trustee or officer of the church that was legatee under the
will; he was one of two trustees to whom the stock in a
private corporation of which he was a member and officer
was given in trust to vote at corporate elections, and whose
duties required the dividends received by them were to be
paid over by the charities named in the will; and further,
he was given an option to purchase at a price agreed upon
by three disinterested persons. It was held that not only
was the witness interested by the terms of the will, but
was interested at the time of the attestation because of his

then association with the established charities which it was the purpose of the will to assist. It is readily seen how the present decision advances upon that. To the extent it advances, it finds no support in either Kessler's Estate or any of our own authorities. I would not qualify in any way Kessler's Estate, but I would hold that the interest which disqualifies must be something more than an appointment to an office created by the will, which may be accepted or declined by the party so appointed at his or her pleasure or convenience; that the interest in any event must be more than a merely contingent one. It is upon this ground that we have held that executors are not disqualified, and I would apply the same rule here.

I would sustain the appeal.