## Johnson's Estate.    Thompson's Appeal.

*Wills—Charitable gifts—Witnesses—Disinterested witnesses—
Act of April 26, 1855, P. L. 328.*

1. The members of an advisory committee constituted by a will creating a charity for the purpose of assisting the trustee in the management of the charity, but without pecuniary interest therein, have no interest in the charity and the fact that one of the individuals designated for membership in the board was one of the witnesses to the will does not render the charitable gift invalid under the Act of April 26, 1855, Sec. 11, P. L. 328, 332, providing that no estate shall be conveyed for charitable uses except the same be done by deed or will attested by two credible and at the time disinterested witnesses.

2. A testator bequeathed his residuary estate to a trust company in trust "to provide for the securing of a site, the planning,

erection and construction of a suitable building or buildings and the perpetual maintenance of a manual training school devoted to the instruction of boys and girls in useful arts and trades, such boys and girls to be primarily of the City of Scranton or secondarily of the County of Lackawanna." Testator further provided "The carrying out of this project will necessarily entail considerable responsibility upon my executor and call for the exercise of good judgment and wise discretion, and it is my wish to appoint an advisory committee or board under whose direction and control this part of my estate shall be considered." Testator named the individuals to constitute the advisory board, and further provided "The advisory board and my executor shall have the largest discretionary powers in regard to the whole subject, confined only by my direction that the object of this charity shall be the founding and maintaining of a manual training school; ......all...... subjects arising in the administration of this charity are to be determined by the said advisory board in the exercise of sound judgment and their best discretion." One of the two subscribing witnesses was named as a member of the advisory board. *Held,* the Orphans' Court properly decided that such witness was disinterested within the meaning of the Act of April 26, 1855, P. L. 328, and that the charitable gift was valid.

Mr. Chief Justice BROWN dissents.

Argued Feb. 24, 1915. Appeal, No. 5, Jan. T., 1915, by Cora J. Thompson, from decree of O. C. Lackawanna Co., Year 1912, No. 411, dismissing exceptions to adjudication, in Estate of Orlando S. Johnson, deceased. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication. Before SANDO, P. J.

From the record it appeared that "On January 1, 1912, O. S. Johnson executed his will in the presence of Arthur H. Christie and John F. Corrigan, who signed their names as subscribing witnesses thereto. In the eighth paragraph the testator devised and bequeathed all his residuary estate to the Scranton Trust Company, in trust, "to provide for the securing of a site, the planning, erection and construction of a suitable building or buildings and the perpetual maintenance of a manual training

school devoted to the instruction of boys and girls in useful arts and trades, such boys and girls to be primarily of the City of Scranton or secondarily of the County of Lackawanna." In the same paragraph the testator appointed an advisory committee or board, composed of five men, one of them being Arthur H. Christy, one of the subscribing witnesses to the will."

Other facts appear in the opinion of the Supreme Court and in the dissenting opinion by BROWN, C. J.

The court dismissed the exceptions. Cora J. Thompson, heir at law and next of kin of decedent, appealed.

*Errors assigned* were in dismissing the exceptions.

*George Wharton Pepper,* with him *John T. Lenahan* and *Thomas P. Duffy,* for appellant.—Arthur H. Christy was interested in the charitable bequest contained in the will within the meaning of the Act of April 26, 1855, P. L. 328: Kessler's Est., 221 Pa. 314; Stinson's Est. (No. 1), 232 Pa. 218.

*John G. Johnson* and *Everett Warren,* of *Warren, Knapp, O'Malley & Hill,* with them *O'Brien & Kelley,* for appellee.—Arthur H. Christy was a disinterested witness; the advisory board of which he was to be a member was clothed with no actual power: Jones v. Habersham, 63 Ga. 146; Loring v. Park, 73 Mass. 42; 7 Gray 42; Marstan's App., 79 Me. 25; Coombs' and Hankinson's App., 105 Pa. 155; Jordan's Est., 161 Pa. 393; Kessler's Est., 221 Pa. 314; Fetterhoff's Est., 228 Pa. 535; Jeanes's Est., 228 Pa. 537.

Stinson's Est. (No. 1), 232 Pa. 218, does not rule the case at bar.

OPINION BY MR. JUSTICE ELKIN, May 10, 1915:

So much has been said in several recent cases upon the question of "disinterested witnesses" under the Act of April 26, 1855, P. L. 328, that no useful purpose will be

served by an elaborate discussion of what has already been decided. It must be accepted as settled law under our Pennsylvania statutes that a witness to a will containing charitable bequests is not disinterested if at the time of attestation he is interested in charity for which provision is made by the testator. Under the Act of 1855 it has been held that if the attesting witness be interested as legatee or devisee under the will, or is to derive a pecuniary benefit, or advantage, from any part of it, or if interested at the time of attestation in a religious or charitable institution to be benefited thereby, he is not disinterested within the meaning of the statute: Kessler's Est., 221 Pa. 314. What constitutes a disqualifying interest has been modified to some extent by the Act of June 7, 1911, P. L. 702; but for the purposes of the present case it is not necessary to discuss the effect of this statute upon the Act of 1855, because the execution of the will here involved antedates the later act.

In the case at bar the single question for decision is whether Christy was interested so as to disqualify him as an attesting witness within the meaning of the Act of 1855. He had no interest as legatee or devisee under the will, nor did he derive any pecuniary benefit or advantage under its provisions; nor was he interested at the time of attestation in any religious or charitable institution made the object of testator's bounty. It is clear, therefore, that under the facts of the present case Christy was not disqualified as an attesting witness within the meaning of the rule as stated in Kessler's Est., 221 Pa. 314. That case was decided upon the facts which gave rise to the controversy and the court was necessarily limited in its discussion to the facts out of which the litigation grew. Since the opinion in that case was handed down several cases, involving the same principle but growing out of a different state of facts, have been before us on appeal. In the decision of these cases it became necessary to determine from time to time what interest disqualified an attesting witness under the par-

ticular facts of each case.  Thus it is that the question
has been considered in a number of cases with the result
that learned counsel for litigants are very properly dili-
gent to aid the cause of their clients by some decision, or
excerpt taken from an opinion, or remark contained
therein, which seems to give color to the contentions
upon which they rely.  It is perhaps needless to say that
in the decision of cases of this character, involving as
they do the proper execution of wills containing chari-
table bequests, each case presenting a different state of
facts, the differentiation of one case from another is not
an easy task for anyone, and out of this situation more or
less confusion is likely to arise.  In the present case
learned counsel for appellant rely upon Stinson's Est.
(No. 1), 232 Pa. 218, and it must be conceded that the
two cases have many points of similarity.  In that case
the attesting witness, held to have a disqualifying in-
terest, was named as a member of the executive com-
mittee of the association which was to maintain, direct,
manage and govern the proposed charity.  It was point-
ed out in that opinion that the board of managers shall
have full power and authority to sell, mortgage or lease,
any real estate or property held by or belonging to said
association.  The testatrix in that case directed that the
general plan of the association to be organized under the
provisions of her will should be the same as that of the
Women's Christian Association of Philadelphia, and this
court held that the executive committee named in her
will, in the absence of any direction to the contrary,
possessed the functions and powers of the board of man-
agers of that association.  This board had power and
authority to enter into any contract or agreement which
they deemed best for the interests of the association.
They had full power to authorize the execution and de-
livery of deeds, conveyances, mortgages, agreements, con-
tracts or other assurances, intended to effectuate the ob-
jects and purposes of the association.  In other words
under the provisions of her will in that case the testatrix

vested in the executive committee full, complete and exclusive power to do everything required to be done in maintaining the charity. This committee had power to take and hold real estate, to sell and convey the same, to invest the fund, and to do every act and thing in connection therewith which the testatrix could have done when alive. The attesting witness was held to be disqualified because she was a member of the executive committee possessing these broad and comprehensive powers.

In the case at bar the residuary estate is devised to the executor in trust for the establishment and maintenance of a manual training school devoted to the instruction of boys and girls in useful arts and trades. The bequest is not to any committee or advisory board but to the Scranton Trust Company as executor and trustee for the uses and purposes specified in the will. The trustee holds the legal title, takes the fund, administers the residuary estate, and will be legally responsible to account for all moneys and property set apart under the residuary clause of the will for the charitable use. It is true that the testator named an advisory board to act in conjunction with the trustee in all matters connected with the administration of the charity, and it must be conceded that great confidence was reposed in this advisory board by decedent. It is also apparent that the testator desired his trustee to have the benefit of such suggestions and advice as he thought the advisory board would give it, and learned counsel for appellant argue with great force that the testator intended this advisory board to be vested with all the powers required to fully administer the charity. To sustain this contention would have the effect of reading out of the will all the provisions relating to the duties of the trustee. Such a construction would make the trustee a mere figure-head without power or authority to administer the residuary estate, although legally responsible to account for the proper administration of the trust. Our conclusion is

that the testator intended what the language of his will primarily means, which is, that his trustee is to be vested with full power and authority to administer the trust estate, and that the advisory board is to act in the capacity of advisors in the administration of the charity. When so understood the difficulties of the present case largely disappear, because under such circumstances, to hold that Christy had such an interest in the charity as to disqualify him as an attesting witness to the will would strain the language of the Act of 1855 beyond the point of reasonable interpretation.

The case has been very ably presented here by both sides to the controversy. Nothing has been left unsaid by either side which would add value to the discussion. It is a close case upon its facts and there has been difference of opinion in our own court as to the conclusion reached. A majority of this court, however, are of opinion that the case was properly disposed of in the court below.

Decree affirmed. All costs to be paid out of the estate.

DISSENTING OPINION BY MR. CHIEF JUSTICE BROWN:

If the testator's execution of his will was not attested by two witnesses disinterested in the charity which he intended to create, it cannot be established. Its failure would be a matter of deep and lasting regret; but the law provides how, and how only a charity may be created by will, and as the law is written it ought to be consistently enforced, without regard to consequences which may result from enforcing it. Instead of differing with the majority of my colleagues on the question brought up on this appeal, I should much prefer to follow, if I could, the reasoning which has led them to the conclusion that the execution of the will of Orlando S. Johnson, a benevolent testator, was attested by two disinterested witnesses; but I cannot, and my conviction is so clear that there was an unfortunate failure to observe the vital requirement of the Act of 1855, that I must

place on record my dissent from the decree which declares the will to have been validly executed.

While the testator gave his residuary estate to his executor in trust for the establishment of a charity, he did much more. He appointed what he calls an advisory board, and thus gives his reason for doing so: "The carrying out of this project will necessarily entail considerable responsibility upon my executor and call for the exercise of good judgment and wise discretion, and it is my wish to appoint an advisory committee or board under whose direction and control this part of my estate shall be administered." After directing that vacancies in the advisory board, caused by death, resignation or inability to act, shall be filled by the remaining members, the testator provides as follows: "The advisory board and my executor shall have the largest discretionary powers in regard to the whole subject, confined only by my direction that the object of this charity shall be the founding and maintaining of a manual training school." The large discretionary powers are not vested in the executor alone, but in it, in connection with the advisory board. Passing this, what specific direction of the testator immediately follows? "The location of the site for such school, the size and extent of the institution, the time when its construction may be commenced and when it may be opened for operation, the number and kind of teachers to be employed, the character of the equipment, the number of pupils to be accommodated, the particular useful arts and trades which are to be taught, the rules regulating the acceptance or rejection of applicants for instruction, the age of pupils, the length of terms of instruction,—these and all other subjects arising in the administration of this charity are to be determined by the said advisory board in the exercise of sound judgment and their best discretion." In view of the foregoing directions, I am utterly unable to understand how Arthur H. Christy, named by the testator as a member of the advisory board, can be regarded as hav-

ing been a disinterested witness to the execution of the will, within the meaning of the Act of 1855, as it has been repeatedly construed by this court. Not even the financial management of the charity is committed to the executor alone. It is committed to the executor in connection with the advisory board.

Even if the case were one of first impression, and effect is to be given to the Act of 1855, Christy ought not to be regarded as a disinterested witness; but the case is not of such nature, and, if well-considered cases are to be followed, and the rule of stare decisis is to prevail, the decree of the court below cannot be affirmed. In support of this I refer particularly to Kessler's Est., 221 Pa. 314; Stinson's Est., 232 Pa. 218, and Leech's Est., 236 Pa. 57. If in Stinson's Estate, Mrs. Ralston, who was named by the testatrix as a member of the executive committee of the charity, was, by reason of such nomination, not a disinterested witness to the execution of the will establishing the charity, how can it be seriously contended that Christy, a member of the advisory board created by the testator, Orlando S. Johnson, was a disinterested witness to the execution of his will? The duties and powers of the executive committee in Stinson's Estate appear in the opinion of this court in that case. Contrasted with them, infinitely greater powers are conferred by the testator in the present case on the members of the advisory board of his charity. This is beyond question, for, after specifically enumerating certain matters which are to be under the direction of that board, the testator declares that "these and all other subjects arising in the administration of this charity are to be determined by the said advisory board in the exercise of sound judgment and their best discretion." The members of the advisory board are not mere advisers to the trustee. That board is woven into the very warp and woof of the charity, and its members are the charity's board of managers, each one of them being directly interested in it.

While it is gratifying that a great charity is to be saved, I regret to be compelled to feel that, in saving it, the law has not been saved. The majority of this court, however, have determined otherwise, and what they have decided must be regarded as the law in the case, notwithstanding my pronounced conviction to the contrary, to which I have given expression.